RENDERED: OCTOBER 29, 2015
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

# FINAL

2014-SC-000456-DGE

DATE 2-18-16 Ella Groou.++ DC

JEFFREY PETTINGILL                                              APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2013-CA-001347-ME
JEFFERSON CIRCUIT COURT
NOS. 13-D-501731 & 13-D-501731-001


SARA YOUNT PETTINGILL                                            APPELLEE


## OPINION OF THE COURT BY JUSTICE KELLER

### AFFIRMING

The Jefferson Circuit Court, Family Division, entered a domestic violence order (DVO) against Jeffrey Pettingill. The Court of Appeals affirmed, and we granted discretionary review. On appeal to this Court, Jeffrey argues that he was deprived of a full appellate review and that the family court erroneously relied on "lethality factors" when entering the DVO. For the reasons stated herein, we affirm the opinion of the Court of Appeals.

## I.    BACKGROUND.

On July 2, 2013, Sara Pettingill filed a domestic violence petition against her husband, Jeffrey. In her petition, Sara alleged that Jeffrey's violent, controlling, and unstable behavior made her fear for her own safety as well as the wellbeing of their minor daughter. She was particularly afraid because she

had recently separated from Jeffrey and was seeking a divorce. Specifically, Sara described an incident when Jeffrey became angry and abused the family pet in front of their daughter. Sara also recounted numerous examples of Jeffrey's controlling behavior, including: setting up surveillance cameras inside their home; locking her out of bank accounts; accessing her private email and social media accounts; and breaking her cell phone. Furthermore, Sara indicated that Jeffrey had become mentally unstable and alleged that he: boasted about keeping a firearm in their home even though he was a convicted felon; threatened the life of his ex-wife who had filed domestic violence charges against him in Tennessee; and claimed to be an ex-CIA agent.

Based on Sara's petition, the Jefferson family court entered an emergency protective order (EPO). The Sheriff was originally unable to serve Jeffrey, noting on the summons, "is avoiding, someone told him about paperwork." Nonetheless, Jeffrey did eventually receive notice of the EPO and summons and appeared, represented by counsel, at the scheduled domestic violence hearing on July 11, 2013.

Following that hearing, the family court entered a DVO against Jeffrey on Administrative Office of the Courts (AOC) Form 275.3. In so doing, the court found by a preponderance of the evidence that acts of domestic violence or abuse had occurred and may occur again. For support, the family court noted further findings of fact on its docket sheet:

> [Jeffrey] avoided service, served 7/10/13
> The Court finds: 9 out of 12 top lethality factors in intimate partner
> 1) [Jeffrey] has abused the family pet;
> 2) Cyber stalking [Sara];

2

3) Threatened the life of his ex-wife in the presence of [Sara];
4) Shown possessive - jealous behavior by monitoring [Sara]'s cell phone;
5) Damaged property ([Sara]'s cell phone) throwing it against the wall;
6) Engaged in rulemaking behaviors including not allowing [Sara] to drive her own car;
7) Has prior felony conviction;
8) Recently purchased a firearm (3/29/13);
9) Recent separation – of the parties
Places [Sara] at extreme risk of physical harm.[1]

Jeffrey appealed the DVO to the Court of Appeals. Jeffrey argued, *inter alia*, that the family court erred when it took judicial notice of, and based its decision on, the domestic violence lethality factors rather than the standard set forth in Kentucky Revised Statute (KRS) 403.720 and 403.750.

The Court of Appeals disagreed and affirmed the family court's DVO. However, as an initial matter, the Court noted that its review was "severely hampered" by the lack of a complete record, stating that it had not received the video record of the hearing. The Court concluded, however, that it was Jeffrey's duty, as appellant, to ensure the record on appeal was sufficient and that because it could not review the testimony, it must assume the omitted record supported the decision of the family court.

Notwithstanding the incomplete record, the Court of Appeals found that the family court applied the appropriate standard based on the fact that it properly completed the AOC 275.3 standard form. The Court reasoned that the additional findings noted on the docket sheet could not be seen to indicate the family court's disregard of the correct standard nor did the reference to lethality factors render the decision infirm. Furthermore, the Court found no

---

[1] Transcribed from handwritten notes.

3

inference by the family court that it was taking judicial notice of any fact and that comparing its findings to the lethality factors did not change the nature or character of the adjudicated facts adduced during the hearing.

The Court of Appeals denied Jeffrey's petition for rehearing, in which he argued that his constitutional right to judicial review had been violated by the Court's failure to obtain and review the complete record. This Court granted discretionary review, and for the following reasons, we affirm the decision of the Court of Appeals. We set forth additional facts as necessary below.

## II.   ANALYSIS.

On appeal to this Court, Jeffrey makes three assignments of error: (1) that he was denied his constitutional right to an appellate review; (2) that the family court erred when it took judicial notice of the lethality factors; and (3) that the court erred when it used the lethality factors as the standard to enter a DVO. We address each argument in turn.

### A.   Appellate Review.

Jeffrey argues that the circuit court clerk failed to certify the video record of the domestic violence hearing on appeal, and, as a result, the Court of Appeals did not receive a copy and could not render a full constitutional appellate review. Jeffrey contends that Kentucky Rule of Civil Procedure (CR) 98(2) requires a circuit court clerk to automatically transmit a copy of the video record of a domestic violence hearing to a reviewing court. Thus, he contends, an appellant has no duty to take action whatsoever to ensure the video record

4

is transmitted. We do not need to reach the merits of this argument for two reasons.

First, Jeffrey admits that he had clear notice that the video was not part of the record on appeal well before he submitted his brief to the Court of Appeals. The circuit court clerk filed a Certification of Record on Appeal on August 23, 2013 and served it on both parties. The Certification clearly states that the "entire record on appeal" *does not contain* a video record or CD/DVD Recordings. Jeffrey does not dispute that he received a copy of the Certification. Jeffrey filed his brief in the Court of Appeals on September 19, 2013 or 27 days after he was notified that the record did not contain the video. Jeffrey made no mention of any incomplete record in his brief, and it was not until the Court of Appeals rendered its decision that Jeffrey assigned error to the missing video. Jeffrey had more than sufficient time to call attention to what he now argues is an incomplete record, yet he silently continued with his appeal. Having missed his opportunity, Jeffrey is foreclosed from assigning error now.

Second, Jeffrey's attorney conceded during oral arguments that the video is not relevant to his client's appeal. When asked what, if anything, the video record would reveal that the family court did not record in its factual findings, Jeffrey's attorney responded that nothing would be different. He further added that this Court has what it needs in the written record to render a full decision and that the family court's findings were a fair and accurate account of what

5

was adduced at the hearing—"no more, no less." Thus, the contents of the video record are unnecessary for purposes of this appeal.

Because Jeffrey is not arguing that the record fails to support the family court's judgment nor does he allege any other factual dispute, we do not need to consider this assignment of error. Questions "'which are merely advisory, academic, hypothetical, incidental or remote, or which will not be decisive of a present controversy' do not present justiciable controversies." *Commonwealth, Kentucky Bd. of Nursing v. Sullivan Univ. Sys., Inc.*, 433 S.W.3d 341, 344 (Ky. 2014) (quoting *Hughes v. Welch*, 664 S.W.2d 205, 208 (Ky.App.1984)). To opine on a non-issue, which would not be decisive, would be to render an advisory opinion in violation of the constitutional mandate of this Court. *Commonwealth v. Hughes*, 873 S.W.2d 828, 830 (Ky. 1994).

**B.  Judicial Notice.**

As he did before the Court of Appeals, Jeffrey continues to argue that the family court impermissibly took judicial notice of the lethality factors for intimate partner violence. He alleges the factors are not the kind of facts that are the proper subject of judicial notice and that the court did not follow proper procedure set forth in Kentucky Rule of Evidence (KRE) 201 when adopting them. The Court of Appeals found that this argument was without merit, and we agree.

A trial court may take judicial notice of adjudicative facts that are not subject to reasonable dispute. KRE 201. In other words, KRE 201 allows judicial notice to be taken of facts which can be determined from

6

"unimpeachable sources" such as "encyclopedias, calendars, maps, medical and historical treatises, almanacs, and public records." Robert G. Lawson, The Kentucky Evidence Law Handbook § 1.00(2)(c), at 7 (5th ed. 2013); *see also Clay v. Commonwealth*, 291 S.W.3d 210, 219 (Ky. 2008). Classic examples of facts taken by judicial notice include the definition of words, the phases of the moon, and reliability of some scientific tests.

Lethality factors or "lethality predictors" for intimate partner violence are not facts but risk factors used by courts, law enforcement, counselors, and social scientists to evaluate the threat of domestic violence between partners. Louise E. Graham and James E. Keller, 15 Kentucky Practice: Domestic Relations Law § 5:13 (West 2014); Symposium, *Death by Intimacy: Risk Factors for Domestic Violence*, 20 Pace L. Rev. 263 (2000). Common factors include: threats of homicide or suicide, or suicide attempts; history of domestic violence and violent criminal conduct; stalking; depression or other mental illness; obsessive attachment to victim; separation of parties; drug or alcohol involvement; possession or access to weapons; abuse of pets; destruction of victim's property; and access to victim and victim's family and other supporters. *Id.* at n. 89.

We agree with Jeffrey that these factors are not the type of facts that are normally taken by judicial notice, but we also agree with the Court of Appeals that these factors were not taken by judicial notice. The family court's reorganization of facts elicited during the hearing was not done according to judicial notice; all the adjudicative facts were proven through testimony. The

7

list of lethality factors—presumably contained in the court's mind—was judicial knowledge rather than judicial notice. This Court has previously held that judicial knowledge and notice are inherently different and that "[w]hile a resident judge's background knowledge of an area may 'inform the judge's assessment of the historical facts,' the judge may not actually testify in the proceeding or interject facts (excluding facts for which proper judicial notice is taken)." *Commonwealth v. Howlett*, 328 S.W.3d 191, 193 (Ky. 2010) (quoting *U.S. v. Berber–Tinoco*, 510 F.3d 1083, 1091 (9th Cir.2007)). The family court had permissible judicial knowledge of the lethality factors. In other words, the court employed its background knowledge of domestic violence risk factors to inform its judgment as to whether the facts of this case indicated that domestic violence may occur again.

Because no adjudicative facts were taken according to judicial notice, there was no violation of KRE 201.

## C.   DVO Standard.

Jeffrey also maintains his argument below that the family court erroneously relied on the lethality factors as the standard for issuing the DVO. Jeffrey asserts that KRS 403.750 and 403.720 make up the proper standard.

A court may issue a DVO if, "[f]ollowing the hearing provided for under KRS 403.740 and 403.745, [it] finds from a preponderance of the evidence that an act or acts of domestic violence and abuse [has] occurred and may again occur . . . ." KRS 403.750. "Domestic violence and abuse' means physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of

8

imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple." KRS 403.720. Thus, in this case, the family court was required to determine whether, by a preponderance of the evidence, Jeffrey inflicted fear of imminent physical injury, serious physical injury, sexual abuse, or assault and whether fear, injury, abuse, or assault might occur in the future. The court properly made this finding.

Following the hearing, the family court found that Sara had met the burden above and entered a DVO against Jeffrey. To document this order, the court completely and accurately filled out AOC Form 275.3 and, under the "Additional Findings" header, checked the box corresponding to "for [Sara] against [Jeffrey] in that it was established, by a preponderance of the evidence, that an act(s) of domestic violence or abuse occurred and may again occur." To supplement this finding, the family court made further factual findings on its docket sheet, which are recounted above.

We agree with the Court of Appeals that the family court adhered to the proper standard and that its reference to lethality factors does not indicate otherwise. The finding made on AOC Form 275.3 clearly tracks the language of KRS 403.750 and applies the proper standard. Additionally, the reference to lethality factors on the docket sheet does not negate the court's previous finding. The court merely used its judicial knowledge of common risk factors to evaluate whether domestic abuse may occur in the future, as required by the statutory standard. The predictive nature of the standard requires the family

9

court to consider the totality of the circumstances and weigh the risk of future violence against issuing a protective order. In hindsight, perhaps the family court should not have employed social science terminology in describing its analysis; nonetheless, the substance of the court's reasoning was not erroneous.

Finally, Jeffrey argues that the family court did not specify sufficient findings of fact to support its DVO because the AOC Form 275.3 is deficient. We disagree.

CR 52.01 provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment . . . ." We are also guided by this Court's holding in *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011) ("CR 52.01 requires that the judge engage in at least a good faith effort at fact-finding and that the found facts be included in a written order") as well as *Keifer v. Keifer*'s admonishment to trial courts to include written findings in all orders affecting child custody. 354 S.W.3d 123, 215 (Ky. 2011).

The family court's written findings of fact were more than sufficient to satisfy CR 52.01. In addition to clearly finding that an act or acts of domestic violence had occurred and may occur again on the form, the court also listed on its docket sheet nine specific findings to support its order. Jeffrey does not contend that these findings are not accurate or that they had not been proven

during the hearing; therefore, we need not weigh their substantive value. This effort more than satisfies the court's good faith duty to record fact-finding.

We need not consider Jeffrey's argument that AOC Form 275.3 is deficient because, as we held above, the family court made more than sufficient findings of fact. Therefore, regardless of the alleged deficiencies in AOC Form 275.3, proper findings were made and recorded in the case at bar.

## III. CONCLUSION.

For the reasons stated above, we affirm the opinion of the Court of Appeals.

Minton, C.J., Abramson, Barber, Cunningham and Keller, JJ., concur. Venters, J., not sitting. Noble, J., concurs but would state that "lethality factors" are merely a series of factors often found to have been present after the fact of domestic violence (and certainly not all of them in every case), and as always, a court must exercise independent judgment as to the weight of the presence of any of the factors in the case before it, as such factors have not been normed nor found to be statistically predictive.


COUNSEL FOR APPELLANT:

William David Tingley


COUNSEL FOR APPELLEE:

Dina Abby Bartlett
Bryan Daniel Gatewood


11