RENDERED: APRIL 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1143-ME

ASHLEY HOLT                                                      APPELLANT

v.          APPEAL FROM HOPKINS CIRCUIT COURT
            HONORABLE SUSAN WESLEY MCCLURE, JUDGE
            ACTION NO. 17-D-00207-004

BROCK DUNBAR                                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, KRAMER, AND MAZE, JUDGES.

GOODWINE, JUDGE: Ashley Holt ("Holt") appeals from the domestic violence

order ("DVO") entered by the Hopkins Circuit Court, Family Division on behalf of

her former husband, Brock Dunbar ("Dunbar") and the parties' two minor children.

Finding no error, we affirm.

## BACKGROUND

On July 22, 2020, Dunbar petitioned the family court for a DVO

against Holt. Based on his petition, the family court issued an emergency

protective order ("EPO") on behalf of Dunbar and the children and scheduled a hearing on the petition.

At the hearing, Dunbar testified to an incident which occurred on July 20, 2020, at Holt's residence. On that day, Dunbar was leaving on a trip to Nashville, Tennessee, and wished to drop off a pair of shoes for the parties' daughter and medication for the parties' son at Holt's home on his way out of town. He sent Holt a text message requesting to do so.[1] When he received no response, he called her several times. Holt eventually responded by telling him to stay away and stating he was "going down." Video Record ("VR") at 8/18/2020, 11:28:50-11:28:57. Despite this response, Dunbar went to her house that evening.

Holt did not answer when Dunbar knocked and rang the doorbell. However, Dunbar could hear her screaming at the children to get in the basement. Dunbar approached a window to speak with her. When Holt opened the window, she aimed a shotgun at Dunbar and said, "Get out of here. I'm going to blow your head off. I'm going to kill you." VR at 8/18/2020, 11:30:09-11:30:14. Dunbar ducked out of her line of sight but then went back to try to speak with her again.

At this time, Holt exited her home and walked onto her screened porch. She was now holding a pistol not the shotgun. From the steps of the porch,

---

[1] According to Dunbar's testimony, in the divorce action, the parties were ordered to communicate only through text messages.

she told Dunbar to leave. Dunbar walked back to his vehicle with the intention of leaving the premises. However, when he reached his vehicle and opened the driver's side door, Holt fired three shots, all of which struck Dunbar's vehicle. Assuming Holt had no more ammunition in the firearm and fearing for the safety of his children, Dunbar approached the porch to disarm Holt. She then shot him "at point blank range" in the kneecap. VR at 8/18/2020, 11:32:13. Dunbar disarmed Holt and she began to strike his face with her fists.

Holt then went back inside her home. Fearful that she was going to return with the shotgun, Dunbar left. After leaving Holt's home, Dunbar called his sister to inform her he had been shot and then called 911 while driving himself to the emergency room. He required surgery for his injury and was hospitalized for three days after the incident.

Dunbar also testified to prior violent acts by Holt, including an instance in which she used a taser on his neck and another where she began to drive away when he was exiting a vehicle, forcing him to jump from the moving vehicle. According to Dunbar, Holt previously threatened to commit suicide.

The family court then heard testimony from Jack Hinton, Holt's former paramour. The two dated between October 2019 and April 2020. During their relationship, Hinton observed several loaded firearms in Holt's home within reach of the children. Holt expressed suicidal thoughts to Hinton on multiple

-3-

occasions, including telling him she thought she and her children would be "better off dead" if they contracted COVID-19.  VR at 8/18/2020, 1:28:30-1:29:04.  Holt told Hinton she hated Dunbar and wanted him "out of the picture."  *Id.* at 1:24:43-1:25:14.  Holt repeatedly said she wanted to shoot Dunbar and made such statements in front of the parties' minor children.  *Id*. at 1:27:34-1:27:46.  Jacob Wilkinson also testified to having been present on an occasion when Holt said she was going to shoot Dunbar.

Holt did not testify, nor did she present any witnesses on her behalf. At the close of evidence, the family court found the following:

> [T]he evidence was uncontroverted.  The [c]ourt finds, by a preponderance of the evidence, that [Holt] committed an act or threat of DV against [Dunbar] in that she purposefully caused bodily harm to [Dunbar] by intentionally shooting him.  The children were present during this assault and were positioned near enough to the parties that they could hear and observe the events (at least partially).  [Holt's] actions placed the children at risk of harm.  The [c]court finds, by a preponderance of the evidence, that [Holt] committed an act or threat of DV against the children in that she engaged in actions that would appear threatening to a reasonable person and would cause imminent fear given the circumstances. Given the family's history, [Holt's] conduct, and the events to which [Dunbar] testified, the [c]ourt also finds that it is reasonable that [Dunbar] believes that future domestic violence may occur again.

Record ("R.") at 18. The family court entered a DVO prohibiting Holt from having contact with Dunbar or the children for a period of two years. This appeal followed.

## STANDARD OF REVIEW

To enter a DVO, the family court must find "by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" KRS[2] 403.740(1). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010) (citation omitted). "The standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous." *Id.* (citations omitted). "Findings are not clearly erroneous if they are supported by substantial evidence." *Id.* at 114-15 (citation omitted).

## ANALYSIS

On appeal, Holt argues: (1) Dunbar's testimony lacked credibility and should not have been relied upon by the family court; (2) there was insufficient evidence to support entry of the DVO on behalf of the children; (3) she is immune from civil action under KRS 503.085; (4) there was insufficient evidence to

---

[2] Kentucky Revised Statutes.

support entry of the DVO on behalf of Dunbar; (5) the family court erred by considering evidence outside of the record; and (6) there was insufficient evidence to support the court's finding that domestic violence may again occur.

Before reaching the merits of Holt's appeal, we must address a significant deficiency in her brief. An appellant's brief must "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR[3] 76.12(4)(c)(v). "It is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019) (citation omitted). Holt's brief is devoid of preservation statements for her arguments.

"Failing to comply with the civil rules is an unnecessary risk the appellate advocate should not chance. Compliance with CR 76.12 is mandatory." *Petrie v. Brackett*, 590 S.W.3d 830, 834-85 (Ky. App. 2019) (citation omitted). "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . .; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citation omitted). Because Holt's brief fails on the merits, we will ignore the deficiency

---

[3] Kentucky Rules of Civil Procedure.

and proceed with review of her claims. However, counsel cannot be assured of the same result if non-compliant in the future.

First, Holt argues Dunbar's testimony lacked credibility. Specifically, she alleges Dunbar lied during his testimony about a substantiation of abuse against him by the Cabinet for Health and Family Services. During his direct testimony, Dunbar stated he had never committed acts of domestic violence against Holt or the children. VR at 8/18/2020, 11:30:41-11:31:12. During cross-examination, he contradicted this testimony by admitting to a 2010 substantiation of abuse for spanking his stepchild. *Id.* at 11:51:30-11:53:05.

"[D]ue regard shall be given to the opportunity of the [family] court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the [family] court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations omitted). Despite the contradiction, the family court found Dunbar's testimony credible. As noted by the court, his testimony was uncontroverted as to the events of July 20, 2020. We have no basis for disturbing the family court's findings.

Second, Holt claims there was insufficient evidence to support the family court's entry of the DVO on behalf of the children. A court may enter a DVO on behalf of children under KRS 403.720(2). "Domestic violence and abuse" is defined to include "physical injury, serious physical injury, stalking,

sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members[.]" KRS 403.720(1).

The family court found the children were aware of the incident and, on that basis, found they were reasonably placed in imminent fear of domestic violence. R. at 18. Dunbar testified he heard Holt scream at the children, instructing them to go to the basement before she approached him with the shotgun. The children were present in the home and able to at least hear the incident as it occurred. With no evidence contradicting this testimony, the family court did not err in finding Holt placed the children in fear of imminent domestic violence.

Third, Holt claims she is immune from civil action for her use of force against Dunbar under KRS 503.085. A review of the record reveals Holt did not raise this argument before the family court. "It is the accepted rule that a question of law which is not presented to or passed upon by the trial court cannot be raised here for the first time." *Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018) (citation and internal quotation marks omitted). Holt's failure to make this argument before the family court is fatal to her appeal on the issue.

Furthermore, substantial evidence supports the family court's entry of the DVO on Dunbar's behalf. Holt attempts to blame Dunbar for the incident by

characterizing him as a "jealous ex-husband" who posed a danger to her. However, these allegations are unsupported by the record. Instead, the record shows, upon Dunbar's arrival at her home, Holt met him with a shotgun and threatened to kill him. She then fired shots at him as he was attempting to leave the property before shooting him in the knee, physically injuring him. This clearly meets the definition of domestic violence and abuse under KRS 403.720(1).

Next, Holt alleges the family court impermissibly relied on evidence not in the record by referring to the "family's history" in its findings of fact. It is true that "[c]ourts have no authority to consider evidence outside the record or to incorporate new proof into the record." *Sunrise Children's Services, Inc. v. Kentucky Unemployment Insurance Commission*, 515 S.W.3d 186, 190 (Ky. App. 2016) (citation omitted). However, a vague reference to a family's history does not amount to consideration of evidence outside the record. Holt identifies no specific evidence not in the record on which the family court relied. Furthermore, Dunbar testified to instances from the family's past including ongoing custody issues, Holt's history of violence and threats of suicide, as well as past communications and interactions between the parties. On this basis, the family court did not err.

Finally, Holt alleges there is not sufficient evidence in the record to support the family court's finding that domestic violence may again occur. It is

Holt's contention that Dunbar trespassed on her property and, so long as he does not do so again, no such events will occur in the future. A family court is required to find that, without entry of the DVO, domestic violence and abuse may again occur. KRS 403.740(1). In making such a determination, the court must consider the "totality of the circumstances." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015).

Once again, the record does not support Holt's allegations. Instead, the totality of the circumstances shows she expressed her desire to shoot Dunbar on multiple occasions. She then fired shots at him as he was attempting to comply with her request to leave the property. She shot him while her children were present in the home and aware of the situation. Considering these events, as well as Holt's ownership of multiple firearms and her history of violent and suicidal threats, there is sufficient and uncontradicted evidence in the record to support the family court's finding that domestic violence may again occur. We find no error.

## CONCLUSION

For the foregoing reasons, we affirm the DVO entered by the Hopkins Circuit Court, Family Division.


ALL CONCUR.

BRIEF FOR APPELLANT:    BRIEF FOR APPELLEE:

Daniel Sherman       Thresa Taylor Hinton
Greenville, Kentucky      Madisonville, Kentucky