RENDERED:  AUGUST 20, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1441-ME

JUSTIN KYLE JOHNSTON                                                APPELLANT

APPEAL FROM HARDIN CIRCUIT COURT
v.          HONORABLE PAMELA ADDINGTON, JUDGE
ACTION NO.  20-D-00474-001

CINDY PATRICIA JOHNSTON                                            APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  COMBS, JONES, AND McNEILL, JUDGES.

McNEILL, JUDGE:  Appellant, Justin Kyle Johnston ("Justin"), appeals from the

Hardin Family Court's entry of a domestic violence order ("DVO") granted on

behalf of Appellee, Cindy Patricia Johnston's ("Cindy") minor child.  Following a

careful review of the record and the law, we vacate and remand for further

proceedings.

# I.     BACKGROUND

Justin and Cindy were married in 2017.  On September 21, 2020,

Cindy, on her own behalf and on behalf of her minor child, S.O., filed a petition

seeking a DVO restraining Justin.  Cindy alleged in her petition that on September

19, 2020:

> My family and [I] were at a friend[']s BBQ . . . when my
> [12-year-old] daughter told Kim Luna that Justin
> Johnston kiss[ed] her and [tried] to stick his [tongue] in
> her mouth.  Justin even told two of the men[,] Jose Luna
> [and] Carslo Lowery in the back yard that "his wife and
> daughter were bitches["] over and over and never used
> [their] names and stated ["]he wanted a divorce from
> them.["]  Chris Green, Terra Green, Tasha Lower were
> also [present] during the [incident] when my [child]
> spoke up.  I'm worried he is going to return to [the]
> house while I'm not home when my child doesn't have
> school.

Based on Cindy's petition, the Hardin Family Court entered an emergency

protective order and issued a summons for Justin.  The family court held a

domestic violence hearing on October 5, 2020.  At the hearing, the family court

heard testimony from Cindy, Justin, and S.O.  Cindy testified:

> Counsel:    Tell me what happened.  [S.O.] made a
>             disclosure . . . we've only got a few minutes,
>             so . . .
>
> Cindy:      She made a disclosure at a barbecue that my
>             husband physically sexually assaulted her.

Counsel: By doing what?

Cindy: That he kissed her and stuck his tongue in her mouth. And she mentioned it to me, but I did not believe her at the time because she was going through phases where she was lying.

. . .

Cindy: [S.O.] was not with me when she told Kim what happened. I was in the back [yard] and [S.O.] and Kim were in the front of the house.

. . .

Counsel: Why did you file this [petition]?

Cindy: To protect my child because I am a rape victim.

Counsel: This isn't . . . about you. You filed this on [S.O.'s] disclosure?

Cindy: Yes.

Counsel: And you believe S.O.'s disclosure is truthful?

Cindy: Yes.

. . .

Counsel: Do you believe that a domestic violence order is necessary to protect S.O. from Mr. Johnston?

Cindy: Yes.

Counsel:     And are you asking the court to enter a
             domestic violence order against Mr.
             Johnston on behalf of S.O.?

Cindy:       Yes.

. . .

Counsel:     Judge, I'll pass this witness.  I know our
             time is limited.

S.O. also provided sworn testimony at the hearing.  When asked by

the family court judge whether she knew the difference between the truth and a lie,

S.O. stated that she did.  S.O. also testified as follows:

Judge:       You know Justin Johnston, don't you?

S.O.:        Yes.

Judge:       And had Mr. Johnston . . . he's your
             stepfather, correct?

S.O.:        Yes, ma'am.

Judge:       Has Mr. Johnston ever done anything to you
             that made you feel uncomfortable?

S.O.:        Yes, ma'am.

Judge:       Do you want to tell me what that was?

S.O.:        Um, a couple months ago, um, he was like
             drunk, drinking like bourbon and stuff and
             beers.  And then he got drunk while I was
             sitting next to him on the couch.  He pulled
             me over and then he kissed me and then I
             said I wanted to go to bed.

Judge:      Alright where was your mother at when all that happened?

S.O.:       She was in the bedroom because she had just got home at 7 [o'clock] and it was about 8 or 9 [o'clock] when this situation happened.

. . .

Judge:      So, you're saying he pulled you to him and he tried to kiss you, is that what you're saying happened?

S.O.:       With his tongue, yes ma'am.

Judge:      Okay, is that the only time he's ever done anything like that?

S.O.:       Yes.  That's the only thing I can remember.

Judge:      Okay.  And what did you do when he tried to do that?

S.O.:       I kind of like pulled back.

Judge:      Okay.  And did he say anything to you or what did he do?

S.O.:       No, um, I went to bed because I asked him if I could go to bed and then I went off to bed. I kind of felt uncomfortable the rest of the night.

Judge:      Yeah.

S.O.:       Like I kind of stayed up late.

Judge:      When did you tell your . . . did you tell your mom when she came home, err, the next day about what happened?

-5-

S.O.: Well, this was like . . . when my mom came home, she was tired, she took a shower, ate dinner. She went to bed. Justin was . . . got a little bit drunk because I guess it was like his day off or something. And then the next day I had to go to my grandma's, um, I told her about it in the car. . . . I don't remember the day, but it was definitely like a Saturday.

Based on S.O.'s testimony and the totality of the evidence presented, the family court judge made an oral finding of domestic violence with respect to S.O., but not with respect to Cindy. At that point, Justin's counsel and the family court engaged in the following exchange on the record:

Counsel: Judge, I know you're in a hurry, but just so the record's clear. Are you finding that, uh, the kiss constitutes, uh, sex abuse, or what under the statute?

Judge: Well, I think it falls within the definition of domestic violence because I think it put her in fear that a kiss was going to maybe lead to something worse. I think a child of her age, that puts her in imminent fear of bodily harm. So, I'm making a finding of domestic violence. I'm going to enter the DVO for a period of one year.

Following that hearing, the Hardin Family Court entered a DVO on behalf of S.O. on Administrative Office of the Courts (AOC) Form 275.3. This appeal followed.

-6-

## II. STANDARD OF REVIEW

We review the entry of a DVO for whether the trial court's finding of domestic violence was an abuse of discretion. *McKinney v. McKinney*, 257 S.W.3d 130, 133 (Ky. App. 2008). Our review of the trial court's factual findings is limited to whether they were clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01; *Hall v. Smith*, 599 S.W.3d 451, 454 (Ky. App. 2020). A trial court's factual determination is not clearly erroneous if it is supported by substantial evidence, which is evidence of sufficient probative value to induce conviction in the minds of reasonable people. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

## III. ANALYSIS

"A trial court is authorized to issue a DVO if it 'finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]'" *Castle v. Castle*, 567 S.W.3d 908, 915 (Ky. App. 2019) (quoting Kentucky Revised Statutes (KRS) 403.740(1)). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010) (citing *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007)). In *Caudill*, this Court addressed the DVO process and discussed the construction of DVO statutes:

> While domestic violence statutes should be construed
> liberally in favor of protecting victims from domestic
> violence and preventing future acts of domestic
> violence[,] the construction cannot be unreasonable.
> Furthermore, we give much deference to a decision by
> the family court, but we cannot countenance actions that
> are arbitrary, capricious or unreasonable.

*Id.* at 115 (internal quotation marks and citations omitted).

KRS 403.720(1) defines domestic violence and abuse as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" On appeal, Justin argues that, even assuming the incident had occurred as S.O. alleged that it did, the act of kissing his 12-year-old stepdaughter does not, without more, constitute domestic violence as defined by KRS 403.720(1).[1] Justin asserts that absent testimony from S.O. that she was fearful that he would attempt to kiss her again or that he may harm her in the future, there was insufficient evidence for the family court to find that Justin placed S.O. in "fear of imminent physical injury."

Although Justin's arguments are directed at the merits of the family court's findings, we must address procedural issues with the DVO not raised on

---

[1] We note that in his testimony at the October 5, 2020 hearing, Justin did deny that the incident took place as described by Cindy and S.O.

appeal. "When the facts reveal a fundamental basis for decision not presented by the parties, it is our duty to address the issue to avoid a misleading application of the law." *Castle*, 567 S.W.3d at 916 (quoting *Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991)). In the case *sub judice*, the family court failed to make written findings of fact and conclusions of law to support its issuance of the DVO. We must address this issue, though not raised, as the lack of written findings of fact and conclusions of law prevents us from conducting a meaningful review of the family court's decision.

The importance of a trial court's written findings is emphasized in family law matters. *See, e.g.*, *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011); *Keifer v. Keifer*, 354 S.W.3d 123, 125-26 (Ky. 2011); *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015); *Thurman v. Thurman*, 560 S.W.3d 884, 887 (Ky. App. 2018). In *Pettingill*, the family court issued a DVO by filling out AOC Form 275.3 and checking the box on the form corresponding to "for [the Petitioner] against [the Respondent] in that it was established, by a preponderance of the evidence, that an act(s) of domestic violence or abuse occurred and may again occur." 480 S.W.3d at 925. The Kentucky Supreme Court held that because the family court in *Pettingill* "listed on its docket sheet nine specific findings to support its order," the court had satisfied its fact-finding duty. *Id.*

-9-

Turning to the case at bar, the DVO issued by the family court consists of the court's having filled out AOC Form 275.3 and checking the box under the "Additional Findings" heading corresponding to "For the Petitioner against the Respondent in that it was established, by a preponderance of the evidence, that an act(s) of domestic violence and abuse . . . has occurred and may again occur[.]" Moreover, the family court checked the box under the "Additional Terms of Order" heading conveying the following term:

> In order to assist in eliminating future acts of domestic violence and abuse, dating violence and abuse, stalking, or sexual assault IT IS HEREBY ORDERED that the findings of fact and conclusions of law announced on the record as set forth hereinabove are expressly and specifically are expressly and specifically [sic] incorporated by reference herein as if written in full. Boone v. Boone, 463 S.W.3d 767, 768 (Ky. App. 2015); Kindred Nursing Centers, Ltd. Partnership v. Sloan, 329 S.W.3d 347, 349 (Ky. App. 2010).

Notwithstanding the efforts of the Hardin Family Court to expressly incorporate its written findings of fact and conclusions of law announced on the record, we cannot say that the family court sufficiently carried out its duty to make written findings. The family court's method of incorporating its oral findings into its written order merely by reference appears to be based on a fundamental misreading of the language of this Court's opinion in *Kindred Nursing Centers Limited Partnership v. Sloan*, 329 S.W.3d 347 (Ky. App. 2010) and later quoted in *Boone v. Boone*, 463 S.W.3d 767, 768 (Ky. App. 2015).

In *Kindred Nursing Centers*, this Court observed that a trial court "speaks only through written orders entered upon the official record." 329 S.W.3d at 349. "[A]ny findings of fact and conclusions of law made orally by the circuit court at an evidentiary hearing cannot be considered by this Court on appeal unless specifically incorporated into a written and properly entered order." *Id.* Therefore, we may only consider findings of fact and conclusions of law that have been specifically incorporated into a written order entered on the record. *See Oakley v. Oakley*, 391 S.W.3d 377, 378 (Ky. App. 2012).

This rule was later clarified by this Court in *Thurman*. "A family court is obligated to make written findings of fact showing the rationale for its actions taken under KRS Chapter 403, including DVO cases, even if the rationale may be gleaned from the record." 560 S.W.3d at 887.

CR 52.01 provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.]" Even if "the trial court's rationale is readily determinable from the record, . . . compliance with CR 52.01 and the applicable sections of KRS Chapter 403 requires *written* findings[.]" *Keifer*, 354 S.W.3d at 126.

We are mindful that in *Williford v. Williford*, 583 S.W.3d 424 (Ky. App. 2019), as in the instant case, the family court's "findings" consisted of only

checked boxes on the AOC Form 275.3. *Id.* at 430. The majority, noting that the appellant had not raised the issue, declined to remand the case for insufficient findings of facts and conclusions of law[2] and affirmed the trial court's findings. *Id.* at 430. We note that the Court's opinion in *Williford* does not expressly overrule *Thurman* or its progeny, concedes that the dissent raises valid issues, and invites the Kentucky Supreme Court to address the issue of whether the AOC Form 275.3 boxes are sufficient to support the issuance of a DVO. *Id.*

Considering the weight of Kentucky authority, we remand this matter to the family court for an entry of written findings of fact and conclusions of law discussing the rationale for its decision. Because we remand for procedural reasons, we do not reach and do not address whether sufficient evidence was presented to warrant the family court's issuance of a DVO against Justin.

For the foregoing reasons, the DVO is vacated and this matter is remanded to the Hardin Family Court for further proceedings consistent with this Opinion.

ALL CONCUR.

---

[2] The result urged by the dissent.

BRIEFS FOR APPELLANT:   BRIEF FOR APPELLEE:

Douglas E. Miller     Cindy P. Johnston, *pro se*
Radcliff, Kentucky     Elizabethtown, Kentucky