RENDERED: APRIL 25, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0967-ME

AARON MAUPIN                                                    APPELLANT

v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE LAUREN ADAMS OGDEN, JUDGE
            ACTION NO. 24-D-501362-001

AMY GARRARD AND D.R.M.,
A CHILD                                                          APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

LAMBERT, JUDGE: Appellant, Aaron Maupin (Maupin), appeals from the

Jefferson Family Court's July 9, 2024, order denying his petition for a Domestic

Violence Order (DVO). After careful review, we reverse and remand.

On April 23, 2024, Maupin filed a domestic violence petition

(Petition) against Appellee, Amy Garrard (Garrard), on behalf of himself and the

parties' four-year-old, minor child-in-common (Child).  Therein, Maupin alleged

the following occurred on April 22, 2024:

> I am wrighting [sic] in regard[s] to my live in girlfriend.
> Yesterday she was drinking heavily, I asked her if she
> would just go to her dad[']s.  She told me no, hit me in
> my shoulder, I had two operations on she was also
> screaming and hollering at me.  There have [sic] been a
> long history of her hitting me.  She is a severe alcholic
> [sic] that drinks over a 5th a day.  My son is scared of her
> as well.  About a month ago, she attacked me in the
> kitchen.  She was on pills and alchol [sic] at the time of
> that incident.  She has also been verbilally [sic] abusive
> towards my father as well.  She starts drinking @ 6:00
> am passes out @ 1:00 pm, sleeps till 8pm most days.  I
> am scared of her.  She has threatned [sic] to have me
> killed on multiple [occasions.]  She is a danger to our
> son.  She has been in multiple fights with neighbors and
> my son was also mixed up in her fights.  Im [sic] scared
> for [Child] & myself.  She has also hit me in the face.
> She was arrested yesterday for domestic violence for
> hitting me in [the] shoulder.

(Record (R.) 1-2.)  On April 23, 2024, the family court issued an emergency

protective order (EPO) for Maupin, but not for the Child.  (R. 17-19.)  The Clerk

issued a summons thereafter (R. 20), and Garrard was served in jail by the

Jefferson County Sheriff's Office with notice that a hearing was scheduled on the

EPO on May 7, 2024.  (R. 21.)

On May 7, 2024, Maupin, with counsel, appeared before the family

court.  (R. 42.)  Garrard was not present.  The family court appointed a guardian *ad*

-2-

*litem* (GAL) to represent the Child, passed the matter a few weeks, and ordered that the EPO remain in place. (Video Record (V.R.) 5/7/24 at 9:13:04 – 9:14:58.)

On May 21, 2024, Maupin, with counsel, and the GAL, appeared before the family court. Garrard, *pro se*, appeared virtually. The family court rescheduled the hearing and ordered the EPO to remain in effect until the pending criminal matter against Garrard, stemming from the incident cited in the Petition, was resolved. (V.R. 5/21/24 at 8:30:30 – 8:33:40.)

On July 9, 2024, Maupin, with counsel; Garrard, *pro se*; and the GAL, appeared before the family court. The family court swore in both parties and read the Petition into the record, which Maupin adopted as his testimony. (V.R. 7/9/24 at 8:50:30 – 8:52:40.) Maupin further described a history of physical abuse, numerous threats to kill him, and Garrard's fights with and threats to kill a neighbor. (V.R. 7/9/24 at 8:53:00 – 8:53:48.) Maupin testified that the Child had been present for "nearly every single [incident]" (V.R. 7/9/24 at 8:53:50) and that he is fearful for his and the Child's safety, even if living apart and co-parenting, because Garrard is a violent person. (V.R. 7/9/24 at 8:55:20 – 8:57:30.)

Maupin stated he has never known Garrard to be sober. (V.R. 7/9/24 at 8:57:31.) Garrard acknowledged her history of drug and alcohol abuse, and testified she is now in recovery treatment, and introduced documents demonstrating her progress. (V.R. 7/9/24 at 9:00:30 – 9:01:09.) Garrard began to

-3-

allege past incidents of domestic violence perpetrated against her by Maupin. (V.R. 7/9/24 at 9:02:39.) Over Maupin's objection to Garrard's allegations, the family court allowed her testimony, stating there was domestic violence on both sides in the past. (V.R. 7/9/24 at 9:02:57 – 9:03:30.)

Garrard confirmed that she pled guilty to domestic violence against Maupin in the criminal matter but denied calling Maupin from jail. (V.R. 7/9/24 at 9:04:40.) Maupin played a voicemail recording wherein Garrard can be heard, stating in part, "thank you so much for making my life hell. Now watch what's gonna happen to you." (V.R. 7/9/24 at 9:04:49 – 9:05:20). Garrard stated she "was intoxicated" when she made that phone call from jail. (V.R. 7/9/24 at 9:05:30.)

After Garrard denied having ever threatened to kill or have Maupin killed (V.R. 7/9/24 at 9:05:48 – 9:06:09), Maupin played another audio recording, wherein Garrard repeatedly states, "if you take my baby away, you're f[***]ing re[****]ed. Are you f[***]ing re[****]ed? You're gonna get killed. Do you wanna get killed?!" (V.R. 7/9/24 at 9:06:10.) Garrard stated she was "under the influence" when she made those remarks. (V.R. 7/9/24 at 9:06:20.) Garrard admitted to hitting Maupin and that it is she who can be heard speaking on the audio recordings. (V.R. 7/9/24 at 9:08:40 – 9:09:55.)

-4-

The family court announced it would dismiss the Petition. (V.R. 7/9/24 at 9:12:20 – 9:13:45.) On July 9, 2024, the family court issued a written AOC Form 275.3 dismissing the Petition. (R. 37-39.) A Calendar Order was contemporaneously entered, containing the family court's findings, which in part states:

> [Maupin], his counsel, [Garrard], & [Child's] GAL appeared. [Maupin] adopted his petition & suppl[emented] w/ further testimony. Parties share an almost 5 [year old child]. Criminal charges were pending [against Garrard] & are now resolved. [Maupin] has significant criminal history & DVO history. [Garrard's] been abused by [Maupin] for years, & [Maupin] has [withheld] the [Child] from her. While [domestic violence] has occurred on both sides, [Garrard] is now sober & in [mental health treatment]. She is thriving [at] this time, & future [domestic violence] is not anticipated. Case is dismissed.

(R. 36.)

Neither party filed a motion for additional factual findings pursuant to Kentucky Rules of Civil Procedure (CR) 52.02. This appeal followed.

As an initial matter, we note that Garrard failed to file a brief in compliance with our Kentucky Rules of Appellate Procedure (RAP). This Court may impose penalties under RAP 31(H); however, the decision whether to impose any penalties is within our discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). Considering the serious nature of domestic violence actions, we

decline to exercise any penalties. *See Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005).

After conducting a hearing, the trial court is authorized to issue a DVO if it "finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" Kentucky Revised Statutes (KRS) 403.740(1). Domestic violence and abuse is defined as "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(2)(a). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence. . . . The standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous. Findings are not clearly erroneous if they are supported by substantial evidence." *Caudill v. Caudill*, 318 S.W.3d 112, 114-15 (Ky. App. 2010) (citations omitted).

Maupin contends that the family court erred and abused its discretion in denying entry of the DVO because there was sufficient evidence to support a finding that domestic violence occurred and that such an act may occur again. Having carefully reviewed the record and hearings, we agree.

First, as previously noted, the family court's Calendar Order acknowledged the existence of domestic violence on both sides. (R. 36.) Thus, the first prong of KRS 403.740 is satisfied, and we need not address it further.

Next, we must address the second prong of KRS 403.740, which requires a finding from a preponderance of the evidence that an act of domestic violence "may again occur" in the future. In determining whether domestic violence may recur, the Kentucky Supreme Court has stated that "[t]he predictive nature of the standard requires the family court to consider the totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015). The "totality of the circumstances" may include other, unrelated conduct indicating a propensity toward the recurrence of domestic violence. *Id.* at 924. *See also Roberts v. Commonwealth*, 599 S.W.3d 841, 858 (Ky. 2020). Here, the family court dismissed the case, finding that future domestic violence is not anticipated. However, we cannot say this finding was supported by substantial evidence given the totality of the circumstances.

The Kentucky Supreme Court's analysis in *Pettingill*, 480 S.W.3d 920, demonstrates consideration of the totality of circumstances. Therein, the Supreme Court concluded the substance of the family court's reasoning was not erroneous and affirmed its finding that domestic violence occurred and may again

occur as the family court thoroughly examined lethality factors, which include, but are not limited to, threats of homicide; history of domestic violence and violent criminal conduct; mental illness; separation of parties; and drug or alcohol involvement. *Id.* at 925. Despite employing non-dispositive social science terminology, the family court adhered to the proper standard of KRS 403.740 and considered the totality of the circumstances. *Id.*

*Sub judice*, Maupin introduced evidence demonstrating numerous threats made by Garrard to kill him; testified as to his fear of Garrard; described recurring physical altercations perpetrated by Garrard, including incidents involving others, such as fights and threats with neighbors; and testified that the Child had been present for nearly every incident. Additionally, testimony by both parties indicated a history of domestic violence and Garrard's lengthy history of drug and alcohol abuse. Contrary to the history of domestic violence connected with substance abuse lasting several years, the family court seemingly found domestic violence was unlikely to occur again because Garrard had been sober for at least three months at the time of the hearing. This finding is clearly erroneous, and following our precedent, the cumulation of facts such as these prove to be qualifying events of domestic violence and abuse and that it may again occur.

The facts of this matter parallel those of *Williford v. Williford*, wherein we affirmed the family court's conclusion that Wife's threats to kill

Husband reasonably caused him to fear imminent physical injury, and found that domestic violence occurred and may again occur. 583 S.W.3d 424 (Ky. App. 2019). In *Williford*, Husband filed a petition after he overheard Wife make threats to kill him while speaking on the phone to a third party. *Id.* At the hearing, a witness to the threats (the parties' adult daughter) corroborated Husband's testimony, testifying that she felt scared and that she heard Wife admit to the responding sheriff's deputy that she made such threats to kill Husband. *Id.* at 427. Additionally, Wife was permitted to testify about previous assaults against her perpetrated by Husband throughout their relationship, but admitted that she never reported the assaults nor had any evidence of such assaults beyond her recollections. *Id.* at 427. Wife also admitted that the threats were referring to Husband, and corroborated the witness's testimony concerning her admission to the sheriff's deputy. *Id.* at 429. This Court affirmed the family court's finding that the evidence presented was sufficient to "reasonably infer that [Wife's] conduct caused [Husband] to fear imminent physical injury[,]" and held the finding of domestic violence and that it may again occur was not clearly erroneous. *Id.* at 429-30.

Likewise, Maupin introduced evidence to corroborate his testimony that Garrard made lethal threats; Garrard was permitted latitude to testify about past domestic violence perpetrated by Maupin, despite having never been reported

-9-

or providing evidence to support her allegations; and Garrard admitted to the accusations against her, specifically that she hit Maupin and that it is she who can be heard on the audio recordings threatening to kill Maupin.

Notably, in *Williford*, Wife's threats to Husband were made to a third party, *id.* at 429, whereas here, Garrard's threats were made directly to the intended target. The threats support the notion that an act of violence "may again occur." The *Williford* Court articulated that the threats made by Wife displayed a future plan to act, ("I'm going to go in there and get him in an argument and blow his head off[.]"). *Id.* at 426. Garrard's threats also indicated a future plan to act if a specific event were to occur ("[i]f you take my baby away . . . you're gonna get killed. Do you wanna get killed?!") (V.R. 7/9/24 at 9:06:10.)

As to a history of prior domestic violence, Maupin testified that Garrard has hit him numerous times throughout the course of their relationship, often in front of the Child, and that he is fearful of Garrard. Likewise, in *Williford*, Husband testified that Wife had threatened him multiple times over their relationship. *Id.* at 426. Police were also involved in both cases stemming from the incidents detailed in the respective petitions. In *Williford*, the responding sheriff's deputy instructed Wife to leave the premises, *id.*, while Garrard was arrested and criminally charged for her actions.

Furthermore, the evidence showed Garrard's drug and alcohol abuse history, as well as violence involving others, as Maupin testified that Garrard has fought with and threatened to kill neighbors, often with the Child present. Maupin and Garrard are additionally involved in an ongoing custody case and will have to co-parent with one another. *See Gibson v. Campbell-Marletta*, 503 S.W.3d 186 (Ky. App. 2016) (DVO affirmed because Petitioner was reasonably fearful for her life when Respondent threatened to use "all force allowed" if she came to his property for purposes of exchanging minor child-in-common's clothing. Family court considered history of reciprocal domestic violence between parties and ongoing custody case, concluding in the context of two parents co-parenting, serious threats of physical violence constitute imminent threat of physical violence.).

In consideration of the totality of circumstances and applicable legal precedent, we conclude the family court abused its discretion and the dismissal of the Petition and DVO action was clearly erroneous.

<u>CONCLUSION</u>

Based on the foregoing, the Jefferson Family Court's July 9, 2024, Order is reversed, and remanded with direction to grant the Petition for a DVO.

ALL CONCUR.

-11-

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEE.

Jason A. Bowman
Louisville, Kentucky