Daniel F. RUPP, Appellant,

v.

Teresa RUPP (Now Tweed), Appellee.

No. 2011–CA–000143–ME.

Court of Appeals of Kentucky.

Aug. 26, 2011.

C. Thomas Hectus, Louisville, KY, for appellant.

Troy DeMuth, John H. Helmers, Jr., Louisville, KY, for appellee.

Before TAYLOR, Chief Judge; ACREE and VANMETER, Judges.

*OPINION*

VANMETER, Judge:

Daniel Rupp appeals from an order of the Jefferson Circuit Court reissuing a

domestic violence order ("DVO") against him. For the following reasons, we affirm.

The fourteen-year marriage between Daniel Rupp and Teresa Rupp (now Tweed) was dissolved by court order in 2003. In November 2004, upon petition by Teresa, the Jefferson Circuit Court issued a DVO against Daniel. The DVO was amended in 2005, reissued in October 2007, amended in July 2010 and August 2010, and extended in October 2010 through December 2010 pending a full hearing on the matter. Following the two-day hearing on October 27 and December 15, 2010, by order entered December 20, 2010, the family court reissued the DVO against Daniel to be effective through December 19, 2013. This appeal followed.

On appeal, Daniel argues that the family court erred by reissuing the DVO since the evidence was insufficient to support its continuation. We disagree.

A trial court's findings of fact will not be set aside unless clearly erroneous, and due regard shall be given for the trial judge to assess the credibility of witnesses. CR[1] 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky.1986). Findings are not clearly erroneous if they are supported by substantial evidence or, in other words, evidence that when taken alone or in light of all the evidence has sufficient probative value to support the trial court's conclusion. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003).

The domestic violence statutes in KRS[2] 403.715 to 403.785 were enacted as a means to allow "victims of domestic violence and abuse to obtain effective, short-term protection against further violence and abuse in order that their lives will be as secure and as uninterrupted as possible[.]" KRS 403.715. KRS 403.720(1) de-

fines "domestic violence and abuse" as "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]"

Following a full evidentiary hearing, a DVO may be entered by a court "if it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur[.]" KRS 403.750(1). The preponderance of the evidence standard requires sufficient evidence to establish "that the alleged victim 'was more likely than not to have been a victim of domestic violence.'" *Wright v. Wright*, 181 S.W.3d 49, 52 (Ky.App.2005) (quoting *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky.1996)). KRS 403.750(2) authorizes the reissuance of a DVO and provides:

Any order entered pursuant to this section shall be effective for a period of time, fixed by the court, not to exceed three (3) years and may be reissued upon expiration for an additional period of up to three (3) years. The number of times an order may be reissued shall not be limited. With respect to whether an order should be reissued, any party may present to the court testimony relating to the importance of the fact that acts of domestic violence or abuse have not occurred during the pendency of the order.

This court has interpreted the aforementioned statute as granting courts the "authority to reissue DVOs even in the absence of additional acts of domestic violence and abuse during the prior period." *Kingrey v. Whitlow*, 150 S.W.3d 67, 70 (Ky.App.2004). In *Kingrey*, we noted,

---

1. Kentucky Rules of Civil Procedure.

2. Kentucky Revised Statutes.

If a DVO has been effective in giving protection to a victim of domestic violence and abuse, then the district court should not be required to reject a request to extend the effective period of the DVO simply because no additional acts have occurred. In other words, the fact that a DVO has been effective in preventing acts of domestic violence and abuse is not a reason to require the court to remove the protection that had previously been afforded to the victim. Rather, it is merely a factor for the court to consider when faced with a request to reissue the DVO.

*Id.*

Though KRS 403.750(2) does not expressly require proof of additional acts of domestic violence to warrant the reissuance of a DVO, courts are tasked with a great responsibility in determining whether reissuance is warranted due to the significant consequences facing the parties upon the reissuance of a DVO. As explained in *Wright,*

> [i]f granted, it may afford the victim protection from physical, emotional, and psychological injury, as well as from sexual abuse or even death. It may further provide the victim an opportunity to move forward in establishing a new life away from an abusive relationship. In many cases, it provides a victim with a court order determining custody, visitation and child support, which he or she might not otherwise be able to obtain. The full impact of EPOs and DVOs are not always immediately seen, but the protection and hope they provide can have lasting effects on the victim and his or her family.

> On the other hand, the impact of having an EPO or DVO entered improperly, hastily, or without a valid basis can have a devastating effect on the alleged perpetrator. To have the legal system manipulated in order to "win" the first battle of a divorce, custody, or criminal proceeding, or in order to get "one-up" on the other party is just as offensive as domestic violence itself. From the prospect of an individual improperly accused of such behavior, the fairness, justice, impartiality, and equality promised by our judicial system is destroyed. In addition, there are severe consequences, such as the immediate loss of one's children, home, financial resources, employment, and dignity. Further, one becomes subject to immediate arrest, imprisonment, and incarceration for up to one year for the violation of a court order, no matter what the situation or circumstances might be.

181 S.W.3d at 52. Thus, we understand the law to require some showing of a continued need for the DVO to be presented to the court, although additional acts of domestic violence need not be proven. *Baird v. Baird,* 234 S.W.3d 385, 388 (Ky. App.2007).

In the case at bar, Teresa testified that Daniel has violated the DVO in the past and continues to engage in threatening behavior toward her, including standing in front of the restroom before court on October 27, 2010 so that she had to walk by him to go to the restroom, and walking directly toward her and staring her in the face as she approached the courtroom door seeking assistance from the bailiff. She further testified that during the marriage Daniel became "a lot more angry and a lot more violent" during times of stress. She believes the pending custody action initiated by Daniel will increase his stress level and her risk of violence from him.

The court noted that two DVOs have been issued against Daniel to protect Teresa; the first one was issued during the marriage in 1995 based on Teresa's testimony that Daniel yelled, cursed and was

physically violent toward her while she was six months pregnant. The second DVO was issued in November 2004 based on Teresa's testimony that Daniel screamed outside her home, harassed her at her home, and threatened her that she "better straighten up or else." Teresa testified that during the marriage "or else" meant that she was going to get slapped. Daniel sought and obtained an amendment to that DVO to allow him to attend their children's sporting events so long as he stayed at least 100 feet away from Teresa and had no contact with her. That DVO was extended for three years in 2007 on motion of Teresa. At that time, Teresa testified that Daniel had violated the DVO by driving in her neighborhood, leaving stuff next door or trash bags in her yard, and glaring at her at their children's ball games. Teresa further testified that at one game, a friend of Daniel's chased her down and told her that he was going to give her a "talking to." The police were called after this incident.

In June 2010, Teresa moved to amend the DVO so that Daniel would have to stay 500 feet away from her at school and sporting events, claiming that Daniel was glaring at her at events and pointing her out to other individuals. A spectator called her a profane word, which Teresa believed was at the prompting of Daniel. Child Protective Services ("CPS") recommended the parties not attend the same games. The court amended the DVO to require Daniel to stay 200 feet away from Teresa at school and sporting events and to have no contact with her. The DVO was further amended to provide that the parent who did not have time with their child at the time of wrestling matches not attend those matches.

At the hearings in October and December 2010, Teresa testified that Daniel violated the DVO by dropping off one of their sons at her home when it was not his time to have the child and by sending her an email discussing his anger at a parent who initiated a CPS complaint against him—describing it as slander and a conspiracy to ruin his reputation. Teresa introduced a photo showing Daniel with a group of people in front of the football stands where Teresa was sitting at a football game a week before the hearing. Daniel testified that he moved away from Teresa when he eventually saw her at the game, and that Teresa was included in a long list of people who were sent the email by mistake.

The court noted in its order that it has had numerous opportunities over the last eight years to hear the parties testify, to observe them, and to assess their credibility. The court found that the parties have a long history of domestic conflict including domestic violence and that emotions have run high during their numerous court appearances. Two DVOs have been issued against Daniel and he has previously been held in contempt of court for violating a DVO. The court noted that Daniel violated it as recently as April 2010 by sending Teresa an angry email. The court found that Daniel is upset over the CPS investigations and may feel additional stress as a result of the pending custody proceeding. Additionally, the court observed that the fact that the parties have a minor child creates situations in which the parties will inevitably cross paths before the child turns eighteen years of age.

Based on the foregoing, the court found that domestic violence has occurred and may occur in the future and that Teresa is in fear of imminent physical harm from Daniel. In light of the parties' history and the high emotion exhibited throughout the proceedings, the court found that Teresa has a reasonable basis for her fear. Finally, the court found that the DVO has been effective in preventing domestic violence

and that a continued need for the DVO existed. Accordingly, the court reissued the DVO for three more years.

Our review of the record reveals that sufficient evidence warrants a finding that the circumstances in this case call for the continuance of the DVO because acts of domestic violence and abuse have occurred and may again occur. *See* KRS 403.750(1). While we have given due consideration to the potential consequences resulting from the issuance of a DVO, we are unable to say that the court erred by reissuing the DVO against Daniel in this case.

The order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.