**Megan Conway BOONE, Appellant**

v.

**Hezekiah L. BOONE, Appellee**

**NO. 2015-CA-001456-ME**

Court of Appeals of Kentucky.

RENDERED: OCTOBER 14, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Harold L. Storment, Louisville, Kentucky

BRIEF FOR APPELLEE: Michael L. Goodwin, Louisville, Kentucky

BEFORE: CLAYTON, COMBS, AND MAZE, JUDGES.

## OPINION

COMBS, JUDGE:

Appellant, Megan Conway Boone, appeals from orders of the Jefferson Family Court dismissing her Petition for a Domestic Violence Order against Appellee, Hezekiah L. Boone, and denying her Motion to Disqualify. After our review, we vacate and remand.

The parties were married on September 17, 2004. Three children were born of the marriage. In October 2014, Megan filed a Petition for Dissolution, No. 14–CI–503202, in Jefferson Circuit Court, Family Division, which was assigned to Division One. At that time, the children were ages 7, 5 and 2.

On November 21, 2014, Megan filed a Petition for a Domestic Violence Order (DVO), No. 14–D–502984–001, alleging that on November 20, 2014, she and Hezekiah had been arguing over the divorce. He became angry, said that he would ruin her family, and refused to leave when she asked him to do so. Megan alleged that Hezekiah followed her through the house, screaming and cursing; that he bumped her with his shoulder and gave her a frightening look. Megan alleged that he is very aggressive when angry. She stated that he left the children alone in the tub and came downstairs to scream at her. The two year old climbed out of the tub and fell. Because of Hezekiah's increasingly aggressive behavior, Megan had become very fearful.

On November 21, 2014, the court entered an Emergency Order of Protection (EPO). It directed that Hezekiah be restrained from any communication with Megan; that he vacate the parties' residence; and that he remain at least 500 feet from her, the children, and Megan's family or household. The EPO applied to the parties' residence as well as to the homes of Megan's parents and sister, to her workplace, and to the children's schools. Hezekiah was served with the EPO on November 21, 2014. A hearing was scheduled for December 1, 2014. The court extended the EPO and passed the hearing to December 11, 2014.

On December 11, 2014, Hezekiah was arrested for violating the EPO. The warrant reflects that he went to the younger children's preschool on December 10, 2014, "and was entering code to gain entry to the school. [He] was seen by school staff and fled the scene." The December 11, 2014, hearing was continued to January 21, 2015, and the EPO was reissued.

On January 21, 2015, following mediation, the parties filed an Agreed Order in the divorce action dismissing the DVO proceeding without prejudice. The court entered an Agreed Restraining Order that Hezekiah remain at least 500 feet from Megan's residence, from her place of employment, from the children's schools, and

from Megan's family. Fewer than five months later, on May 3, 2015, Megan filed another Domestic Violence Petition, No. 14-D-502984-002. She alleged that on February 18, 2015, about one month after the parties had been in court, Hezekiah started to follow her to her car. On April 12 and 13, 2015, he came within less than 500 feet of her sister's home. On April 25, 2015, he texted Megan a link for a GPS tracking service. Megan also alleged that on May 2, 2015, while she was attending the Kentucky Derby, Hezekiah came within less than 500 feet of her, stared at her and her friends, and at one point was "cussing and mumbling under his breath." A state trooper checked Hezekiah's ticket, which was for a section different from Megan's. He was told to leave and to stay away. Megan alleged that Hezekiah's behavior continued to escalate and that she was afraid of what he might do.

A docket sheet order of May 11, 2015, reflects that the court (Hon. Angela Johnson, Division One) recused in the DVO proceeding, after having recused in the divorce action. On May 13, 2015, the Chief Judge assigned the case to Division Seven, Hon. Denise Brown.

On May 20, 2015, the court conducted a hearing and dismissed the second Domestic Violence Petition. The docket sheet order for that date recites:

> Proof heard; Ct finds by a preponderance of evidence that no act of domestic violence occurred. Pet[itioner] has alleged violations of restraining order issued in circuit divorce action. Motion should be filed in that court. Petitioner's testimony does not allege threats or acts of domestic violence.

After the hearing on May 20, 2015, at which the second DVO was dismissed, Megan took out a third Domestic Violence Petition, No. 14-D-502984-003, which is the subject of this appeal. A hearing on the third DVO was conducted on July 8, 2015. Megan alleged many of the same incidents outlined in the prior Petitions as well as events that had occurred after she had filed the second Petition as follows:

> Yesterday, I had to view videos confiscated from [Hezekiah's] phone by police of [Hezekiah] recording my mother in the bathroom, videos of me ... exposed, and videos of my mother sleeping and many other women he is videotaping or taking pictures of without consent (including my sister). [Hezekiah] was arrested on two charges of Stalking I and Failure to Comply as well as an EPO Violation (with other aspects of the case under investigation) and police had a warrant to go into his phone and revealed this information to me. On May 8th [2015] he was witnessed prying open a window to my home while I was asleep (I later verified that the screen had been bent). He was also recorded on camera walking around in my backyard. On May 8th, May 9th and May 10th there are pictures of him looking through my windows and going around in my backyard for several hours in the middle of the night (I already had a restraining order, he knew he was being investigated by the police, and he still insisted on stalking me).

Megan testified at the hearing on May 27, 2015. She had installed motion-activated cameras outside her home on May 7, 2015. She reviewed images taken on May 8, 9, and 10, 2015. Megan identified various photographs taken outside her residence in the middle of the night, and she identified the person in the photographs as Hezekiah. Megan testified that she recognized his clothing, shoes, build, his bald head and goatee, and the "way he walks, he was pacing around." Megan explained that after she discovered that Hezekiah had been at the residence, she contacted the police.

Hezekiah was arrested and his phone was confiscated. The trial court granted Megan leave to subpoena the officer regarding videos obtained from Hezekiah's phone.

Detective Tillman testified at the next DVO hearing on July 8, 2015. He works for Louisville Metro Police in the domestic violence unit. On November 21, 2014, he first met with Megan and her sister at their mother's house. An incident of domestic violence had occurred the night before, and there was an ongoing issue of stalking behavior with respect to Megan's sister. Detective Tillman explained that during the course of Hezekiah's arrest on May 13, 2015, for stalking, Hezekiah asked that they bring his cell phone. Detective Tillman testified that a search warrant was obtained for the cell phone. The phone was taken to the computer forensics lab for download. Tillman also testified that the Jefferson County Grand Jury indicted Hezekiah on July 7, 2015, on numerous charges, including: Burglary, 2nd Degree; two counts of Stalking, 1st Degree; multiple counts of Voyeurism, Harassment with Physical Contact, Menacing and Harassment with no Physical Contact; and violation of the EPO arising from Hezekiah's visit to the children's preschool.

Detective Tillman testified about the photographs taken from the cameras outside the residence; he identified Hezekiah in the photographs, and he testified that he had been positively identified by his wife. Tillman also testified about videos on Hezekiah's cell phone, including videos of Megan's mother in her bathroom and of a sexual act involving him and Megan. Megan stated that she never consented to Hezekiah's videotaping her in an intimate context or any other setting.

After the DVO hearing, Judge Brown recused from the pending divorce action. The order was signed July 31, 2015, and

was entered on August 6, 2015. It provides as follows:

The presiding judge having disqualified herself in this action due to receipt of an exparte [sic] communication from one of the parties that could be perceived as inappropriate;

IT IS HEREBY ORDERED, this Court does recuse itself and remands this case to the Court Administrators for appropriate reallotment to another division under the Rules of Court.

(upper case original). On August 11, 2015, the divorce action was reassigned to Jefferson Circuit Court, Family Division Two.

Although she had already recused from the divorce case, Judge Brown exercised jurisdiction over the DVO petition and dismissed it by order of August 14, 2015. She concluded that Megan failed to sustain her burden of proof that an act of domestic violence had occurred and might occur again. With respect to the photographs taken outside the residence, the court found as follows:

the detective alleges the photographs show [Hezekiah] at the marital residence on May 9, 2015 and May 10, 2015, in violation of the no-contact order. The photographs do no [sic] clearly show [Hezekiah], but the detective believes it is .... [Megan] also identified [Hezekiah] as the person in the pictures.

The court believed that the video showing sexual acts had been recorded without Megan's knowledge, noting that it was potentially a criminal act. Nonetheless, the court did not believe that it constituted an act of domestic violence. The court concluded that "the stalking allegations ... are also not currently defined as an act of domestic violence under Kentucky law. While the Kentucky legislature has recently amended the law to include stalking, that provision does not take effect until January 1, 2016." The court found that the

remaining allegations involving Megan's family members "mostly related to stalking and voyeurism ... are not currently considered acts of domestic violence or domestic abuse."

On August 19, 2015, Megan filed a motion to vacate the order of August 14, 2015, as well as for the Judge to disqualify herself in the DVO case after having disqualified in the divorce action. In her accompanying affidavit, Megan averred that **she** had not engaged in an *ex parte* communication with the Judge. Megan requested that the DVO proceeding also be assigned to Division Two, the court to which the dissolution proceeding had been assigned after the judge's recusal.

On August 24, 2015, Megan filed a Motion for a new trial pursuant to CR[1] 59.01(a), (b), (d), (f) and/or (h); to alter, amend, or vacate pursuant to CR 59.05; for other relief pursuant to CR 60.02; and for relief pursuant to CR 61.02. By an order entered September 10, 2015, the court summarily denied Megan's motion to alter, amend or vacate. It also denied her motion to disqualify, explaining as follows:

1. The parties in this action have a separate circuit court divorce case. [Hezekiah] is represented by counsel in that case. [Hezekiah's] counsel in the circuit court action was retained after the hearing in this case. [Hezekiah's] counsel in that case was not [Hezekiah's] counsel in this action.

2. On August 6, 2015, the Court entered an order in the parties' Circuit divorce case based on ex parte communication received from counsel for [Hezekiah] in that case. The Court did not view the communication and has no indication as to what it referred to. However, the Court chose to disqualify itself based on the fact that the

parties are engaged in a highly contentious divorce action and the receipt of the communication could be perceived as inappropriate.

The court reasoned that the divorce litigation was ongoing and that Hezekiah's counsel continued to represent him: "[T]hese two (2) factors in the circuit case, which were not present in this domestic violence action, could result in [Megan's] believing she would not receive a fair and impartial trial in the divorce case." On September 16, 2015, Megan filed a Notice of Appeal to this Court.

On appeal, Megan contends that the court abused its discretion in denying her Petition for a DVO and that Judge Brown should have disqualified herself with respect to the DVO. We will address the disqualification issue first.

■ Megan contends that Judge Brown erred by not recusing herself before rendering a decision on the DVO Petition because "it stands to reason that the ex parte communication ... would also be perceived as inappropriate in the domestic violence case...." Megan cites *Wedding v. Lair*, 404 S.W.2d 451 (Ky. 1966), which held that where a circuit judge had voluntarily disqualified himself, he lost jurisdiction and his subsequent orders were a nullity. Hezekiah argues that Megan should have raised the issue at the DVO hearing. However, Judge Brown did not disqualify herself in the divorce action until *after* the DVO hearing.

To recapitulate, the sequence of events was as follows:

(1) the hearing for the third DVO: 07/08/2015;

(2) recusal from the dissolution: 07/31/2015 with order entered on 08/06/2015;

---

1. Kentucky Rules of Civil Procedure.

(3) reassignment of dissolution to another division: 08/11/2015;

(4) order dismissing DVO: 08/14/2015;

(5) order denying motions filed pursuant to CR 59.01, 59.05, 60.02, and 61.02: 09/10/2015.

 In denying Megan's motion to disqualify, Judge Brown explained that when she recused in the divorce action, it was still ongoing—unlike the DVO proceeding. We disagree. Both proceedings were still ongoing. When Judge Brown recused from the divorce portion, she had not yet issued the order on the DVO Petition. The clear mandate of *Keifer v. Keifer*, 354 S.W.3d 123 (Ky. 2011), that there be findings of fact in a written order, applies to DVOs. *Boone v. Boone,*[2] 463 S.W.3d 767 (Ky. App. 2015). The issue before us is whether the recusal of a family court judge in one action requires her disqualification in other pending actions involving the same parties. In light of the specifically crafted jurisdiction of a family court, we believe that such recusal is indeed required. "Kentucky has created the family court system. The 'one judge, one family' approach is a remedy to the fractionalization of family jurisdiction." *Wallace v. Wallace*, 224 S.W.3d 587, 591 (Ky. App. 2007). Jurisdiction of family court is governed by KRS[3] 23A.100, which provides in relevant part:

(1) As a division of Circuit Court with general jurisdiction pursuant to Section 112(6) of the Constitution of Kentucky, a family court division of Circuit Court shall retain jurisdiction in the following cases:

(a) Dissolution of marriage;

(b) Child custody;

(c) Visitation;

(d) Maintenance and support;

(e) Equitable distribution of property in dissolution cases;

(f) Adoption; and

(g) Termination of parental rights.

(2) In addition to general jurisdiction of Circuit Court, a family court division of Circuit Court shall have the following additional jurisdiction:

(a) Domestic violence and abuse proceedings under KRS Chapter 403 subsequent to the issuance of an emergency protective order in accord with local protocols under KRS 403.725[.]

In *B.C. v. B.T.*, 182 S.W.3d 213, 216 (Ky. App. 2005), this Court explained:

It is a misnomer to say that a family court serves the role of a district court and a circuit court. KRS 23A.100 specifically states that the family court is 'a division of Circuit Court with general jurisdiction pursuant to Section 112(6) of the Constitution of Kentucky.' . . . Thus, the family court when hearing cases normally within the district court's jurisdiction, is not sitting as a district court, but rather as a circuit court given special jurisdiction to hear cases normally under the district court's charge.

The assignment of cases in Jefferson Family Court is governed by JFRP[4] 104. Subsection B provides in relevant part: "In order to facilitate the concept of one-family, one-judge, **if a subsequent action is filed regarding the same litigants**, that action shall be assigned to the family court division before which the parties first appeared." (Emphasis added.)

 We conclude that when Judge Brown recused in the divorce action, she simultaneously and automatically disquali-

---

**2.** This citation does not refer to the parties presently before the Court—despite the similarity of the names.

**3.** Kentucky Revised Statutes.

**4.** Jefferson Family (Court) Rule of Procedure.

fied herself from the DVO proceeding because the "very purpose for the creation of the family courts is to consolidate litigation and controversies related to a family into one court." *Wallace* at 591. Having disqualified herself, Judge Brown lost jurisdiction, and the August 14, 2015, and September 10, 2015, orders—from which Megan appeals—are void. *Appalachian Regional Healthcare, Inc. v. Coleman*, 239 S.W.3d 49 (Ky. 2007) (Recused judge has no jurisdiction to make a substantive ruling.); *see Beckord v. District Court of Larimer County in Eighth Judicial Dist.*, 698 P.2d 1323, 1329–30 (Colo. 1985) (Where chief justice ordered judge to hear consolidated actions, judge could not recuse himself from only part of multi-district litigation; recusal due to possibility of appearance of impropriety effectively disqualified judge from hearing or deciding any issue in any of the cases, and his subsequent orders were void.).

We have determined that the court lacked jurisdiction, and while we express no opinion on the merits, we must address one issue. It appears that the court misconstrued KRS 403.720(1). The statute in effect at the time defined domestic violence as "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]" In dismissing Megan's Petition for a DVO, the family court explained that "the stalking allegations … are … not currently defined as an act of domestic violence under Kentucky law."

Amended effective January 1, 2016, KRS 403.720(1) now provides as follows: "Domestic violence and abuse" means physical injury, serious physical injury, stalking, sexual abuse, assault, or the infliction of fear of imminent physical

injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]

Even prior to that recent amendment, Kentucky courts have liberally construed our statutory scheme in order to afford relief. KRS 403.715(1) mandates that the domestic violence statutes be interpreted to "[a]llow victims to obtain effective, short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible[.]" Conduct which can reasonably be inferred to cause fear of imminent physical injury has been deemed to satisfy the statutory definition of domestic violence under Kentucky law prior to the 2016 amendment. *Hohman v. Dery*, 371 S.W.3d 780, 783 (Ky. App. 2012) (Evidence presented sufficient for court to reasonably infer that father's conduct caused mother to fear imminent physical injury, where mother felt threatened when father clenched fists and yelled at her, mother believed father unable to control emotions, feared his conduct would escalate and was concerned about father's frequent drive-bys and text messages.).

In *Crabtree v. Crabtree*, 484 S.W.3d 316, 318 (Ky. App. 2016). This Court recently interpreted the domestic violence legislation to be broad enough to encompass potential psychological damage to a family by virtue of a suicide threat by the father:

The father informed the mother that he would commit suicide in the presence of their three children.... [T]he inevitable consequence of such a statement is to terrorize the recipients of the information.

quoting *J.D.Y. v. B.H.D.*, No. 2007–CA–001519–ME (2008 WL 4182050) (September 12, 2008).

We vacate the orders entered on August 14, 2015, and on September 10, 2015. We remand with instructions that this case be re-assigned to the same Division as the divorce action, Case No. 14–CI–503202. "There is a complete record, including video transcripts of the hearing, making additional testimony unnecessary." *Lynch v. Lynch*, 737 S.W.2d 184, 186 (Ky. App. 1987). Upon remand, the court in that Division is directed to issue an Order— with written findings—on Megan's Petition for a DVO based upon the record before it.

ALL CONCUR.