RENDERED:  SEPTEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0222-ME

ANTWAN D. MILES                                        APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE TARA HAGERTY, JUDGE
ACTION NO. 18-D-502963-003

LYNDSEY[1] KAY SKAGGS                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL,
JUDGES.

CLAYTON, CHIEF JUDGE:  Antwan D. Miles ("Miles") appeals from the

Jefferson Circuit Court's entry of a domestic violence order ("DVO") against him

---

[1] The Appellant named "Lyndsey Kay Skaggs" as Appellee in the notice of appeal.  This appears to be an incorrect spelling of Appellee's first name.  As such, the Court has chosen to use "Lyndsay" which is consistent with the circuit court.

and in favor of Lyndsay Kay Skaggs ("Skaggs").  Upon review of the record and applicable law, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Miles and Skaggs were previously in a relationship and had one child together.  Prior to the petition involved in this situation, Skaggs filed two petitions against Miles for an Emergency Protective Order ("EPO").  The first was in October of 2018, in which Skaggs alleged that Miles had followed her from her home to the mall, and then to various stores once she arrived at the mall.  Skaggs further alleged that Miles put his arm around her so that she could not walk away from him and would not leave her alone despite her repeated requests for him to do so.  Additionally, Skaggs alleged that Miles followed her into the parking lot and would not let her close her car door.  Skaggs indicated that such behavior had been going on since April of 2018, including Miles following her to and from work, constantly calling and "FaceTiming" her, and threatening to kill her.  At Skaggs' request, the circuit court entered an order dismissing Skaggs' first petition for an EPO without prejudice.

Skaggs filed the second petition for an EPO against Miles on April 18, 2019.  Skaggs alleged in the petition that Miles was parked at her home when she arrived home and proceeded to punch her car windows.  Skaggs alleged that this encounter ultimately ended with Miles raping her.  Skaggs further alleged other

threatening behaviors by Miles, including blocking her car in her driveway to prevent her from leaving and stalking her. Additionally, Skaggs indicated that Miles possessed a firearm and was a convicted felon. Following a hearing, the court dismissed Skaggs' petition on May 14, 2019, finding that Skaggs had both made numerous phone calls to Miles and had permitted Miles to watch their baby for a period of one week after she had filed her second petition for an EPO.

Thereafter, on October 5, 2020, Skaggs filed a third petition against Miles. Skaggs alleged in the third petition that Miles had been arrested for numerous narcotics and firearm offenses and that a law enforcement officer had advised her that Miles and his family believed Skaggs was responsible for the arrest and that her life was in danger. She reiterated that Miles had assaulted and stalked her in the past, that Miles' family had also threatened her, and that she was scared for her safety and the safety of her children.

The circuit court held a hearing on Skaggs' third petition on November 17, 2020. Skaggs first testified that everything that she had alleged in her petition was accurate and should be considered by the trial court as part of her testimony at the hearing. Skaggs further described that she had seen Miles with a pistol before, and testified that, on September 30, 2020, she learned that Miles had been arrested. Specifically, she testified that she received a text message from a detective involved in Miles' case indicating that Miles had been arrested and that

she may want to leave her home because Miles and his family blamed her for his arrest. Skaggs further testified that, once she received the information, she did not leave her home for three days out of fear, and that she was scared inside of her home as well. Finally, Skaggs testified during cross-examination that Miles had not contacted her since January 2020, when the court ordered the parties to have no contact in their custody action.

Miles declined to testify at the hearing because of his pending criminal action.

Following the hearing, the court entered a DVO against Miles for one year. Specifically, the circuit court stated that "[g]iven the entirety of all of the circumstances and the history that I'm aware of I'm, I'm gonna enter the DVO for one year that Mr. Miles not have any contact with Ms. Skaggs." However, the circuit court declined to address anything related to the children in the case and did not require Miles to go to any classes. The court found that Skaggs did feel threatened, and that although the court had declined to grant the previous petition, that the new evidence that Miles potentially blamed her for his arrest, in the totality of the circumstances, a DVO for one year was justified in this case. Miles subsequently filed a motion to alter, amend, or vacate, which was denied on February 9, 2021.

## ANALYSIS

Upon appellate review of a DVO, "the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted). A finding made by the trial court is not clearly erroneous if it is "supported by substantial evidence or, in other words, evidence that when taken alone or in light of all the evidence has sufficient probative value to support the trial court's conclusion." *Rupp v. Rupp*, 357 S.W.3d 207, 208 (Ky. App. 2011) (citation omitted). Further, "due regard shall be given to the opportunity of the trial judge to judge the credibility of the witnesses." Kentucky Rules of Civil Procedure (CR) 52.01; *see also Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986).

Turning to the particular facts and applicable law in this case, pursuant to Kentucky Revised Statutes (KRS) 403.740(1), "[f]ollowing a hearing . . . if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order[.]" Therefore, pursuant to the statutory language, a trial court must make two separate findings – that domestic violence and abuse has occurred as well as the likelihood of future domestic violence. *Guenther v. Guenther*, 379 S.W.3d 796, 802 (Ky. App. 2012).

"The preponderance of the evidence standard is met when sufficient evidence establishes that the alleged victim was more likely than not to have been a victim of domestic violence." *Gomez*, 254 S.W.3d at 842 (internal quotation marks and citation omitted). The act of domestic violence and abuse is defined as: "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(1). "[I]n the context of domestic violence and abuse . . . belief that danger is imminent can be inferred from a past pattern of repeated serious abuse." KRS 503.010(3).

Regarding evidence that domestic violence may again occur as required by KRS 403.740(1), the Kentucky Supreme Court has observed that "[t]he predictive nature of the standard requires the family court to consider the totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015). In *Boone v. Boone*, 501 S.W.3d 434, 440 (Ky. App. 2016), this Court explained:

> Kentucky courts have liberally construed our statutory
> scheme in order to afford relief. KRS 403.715(1)
> mandates that the domestic violence statutes be
> interpreted to "[a]llow victims to obtain effective, short-
> term protection against further wrongful conduct in order
> that their lives may be as secure and as uninterrupted as
> possible[.]"

(Citation omitted.)

In this case, Miles argues that the circuit court abused its discretion in entering the DVO without a sufficient factual basis. We have examined the record in its entirety and are not persuaded by Miles' arguments that the circuit court's findings were clearly erroneous or that the circuit court abused its discretion. Proof in support of the DVO was adduced in the form of Skaggs' testimony that Miles had inflicted fear of imminent physical injury or assault upon Skaggs, which testimony may constitute substantial evidence to support the trial court's findings. *Bjelland v. Bjelland*, 408 S.W.3d 86, 89 (Ky. App. 2013).

In particular, the court heard testimony from Skaggs that Miles had threatened and stalked her in the past and that she was fearful of him. Additionally, the court heard evidence that Miles was in the possession of a firearm and blamed Skaggs for his arrest on drug charges. Given Skaggs' testimony concerning Miles' past pattern of repeated violent outbursts coupled with her testimony concerning the message she had received from the detective indicating that she should leave her home, Skaggs' fear of imminent physical injury was reasonable. Indeed, "[d]eciding which witness to believe is within the sound discretion of the family court as fact-finder; we will not second-guess the family court, which had the opportunity to observe the parties and assess their

credibility." *Hunter v. Mena*, 302 S.W.3d 93, 98 (Ky. App. 2010) (citing CR 52.01). Further:

> the trier of fact has the right to believe the evidence presented by one litigant in preference to another. The trier of fact may believe any witness in whole or in part. The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness.

*Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996) (citations omitted). After hearing the testimony from Skaggs, the circuit court chose to believe Skaggs' version of events, concluding that an act of domestic violence had occurred and that Skaggs was the victim.

Further, based on the record, we conclude the evidence presented was sufficient for the circuit court to reasonably infer that Miles had previously engaged in acts of domestic violence against Skaggs and that his conduct caused Skaggs to be in imminent fear that he would engage in future acts of domestic violence against her if he was not restrained. The court reiterated that it was considering the totality of the circumstances in reaching its decision, and that it was narrowly-tailoring its decision to the facts of the case. Further, based on the totality of the evidence concerning the fact that the parties had children together and the ongoing conflict between them, the trial court's conclusion that domestic violence and abuse may occur again was not clearly erroneous.

## CONCLUSION

In light of the foregoing, the Jefferson Circuit Court's November 17, 2020 DVO against Miles is affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:

Catherine J. Kamenish
Louisville, Kentucky

BRIEF FOR APPELLEE:

Leland R. Howard, II
Louisville, Kentucky