RENDERED:  DECEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0807-ME

CODY DALE LEONARD                                                    APPELLANT

v.
APPEAL FROM GRAVES CIRCUIT COURT
HONORABLE KEVIN D. BISHOP, JUDGE
ACTION NO. 22-D-00031-001

JENNIFER ROSE LEONARD                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND TAYLOR, JUDGES.

COMBS, JUDGE:  This is an appeal from a Domestic Violence Order (DVO).

After our review, we affirm.

On April 18, 2022, the Appellee, Jennifer Rose Leonard (Jennifer),

filed a petition for an order of protection against her husband, the Appellee, Cody

Dale Leonard (Cody), on behalf of herself and the parties' two minor children.

Jennifer alleged that on April 17, 2022, Cody attempted to persuade their son to

ride on a four-wheeler with him after he (Cody) had been drinking. When Jennifer refused to allow their son to do so, Cody "became angry, yelling and cursing. . . . told [Jennifer] to get [her] things and leave the home." Jennifer left with the children and went to her parents' home. According to the petition, Cody called Jennifer later that evening and told her that if she did not return home with the children within 30 minutes, Cody would "f**k [her] up. F**k your dad up and f**k your whole world up." Jennifer explained that Cody had been very angry and erratic for several days prior to this occurrence:

> Cody has a severe alcohol abuse problem that has been escalated over the past 11 years to the point that he has gotten medication to attempt to stop drinking. On numerous occasions he has attempted to get my children to ride with him on a four wheeler or vehicle while he was driving drunk. Cody also has significant mental health issues to the point that he has made numerous threats to kill himself. I AM SCARED FOR ME AND MY CHILDREN[.]

(Upper case original.) On April 18, 2022, the Graves District Court entered an Emergency Protective Order (EPO). The matter was transferred subsequently to Graves Circuit Court,[1] which conducted a hearing on May 9, 2022.

Jennifer testified at the hearing. Cody had been very angry with her on April 16, 2022. Jennifer heard a speakerphone call between Cody and their

---

[1] According to the circuit court's order ruling on Cody's motion to vacate, the domestic violence case was transferred in accordance with the local rule after Cody filed a divorce action in Graves Circuit Court on April 22, 2022.

daughter, who was 12 years of age. Cody said that he was not coming home, and he asked their daughter to pack some clothes for him. The daughter was upset. Cody returned home; he was "flipping" Jennifer off and calling her derogatory names. According to Jennifer, their daughter, who was still awake, heard it. Cody took some clothes and left for the night.

The next morning (Easter Sunday, April 17, 2022), Cody came home. He seemed a little more normal, and they went to church and did their Easter festivities. That evening, Jennifer went to the shop to check on Cody. A can of beer was on a table. Cody was slurring his words, was stumbling, and was very angry with Jennifer. Cody asked their eight-year-old son, who was with Jennifer, to ride with him on a four-wheeler to go fishing on their property. Jennifer said that their son could go fishing but that he would have to ride with her and that she would stay with them. Cody refused and told their son to get out of the car and get on the four-wheeler. Jennifer told her son to get in the car. Cody proceeded to yell derogatory comments, telling Jennifer to "get her s**t and get the f**k out." Jennifer took the children and went to her mother's house.

About 10:30 p.m. that night, Cody called Jennifer from his brother-in-law's phone, demanding to know where the kids were. Jennifer said that they were with her mother. Jennifer testified that Cody said he wanted them home in 30 minutes or that he was going to "f**k me up, f**k my dad up, and f**k up my

-3-

whole world." Jennifer took that statement as a threat to her children because her children **are** her whole world. Jennifer filed the EPO the next morning.

Jennifer further testified that Cody has had a severe drinking problem for the last several years. Cody's counsel objected to relevancy. The court believed that her statement was relevant and stated that it would let Jennifer "go a little bit, but not very far." Following further discussion -- and objection -- regarding Cody's drinking history and risk to the children, the court advised that it would "sustain that [objection] for today," directing Jennifer's counsel to save that line of questioning for the *pendente lite* hearing. The court asked Jennifer if she understood Cody's statements -- that he would f**k her, her dad, and her world up -- as a threat to her personal safety. Jennifer responded, "Absolutely" -- so much so, that she stayed up the whole night watching her kids.

On redirect, Jennifer testified that she was afraid when Cody was telling their son to get on the four-wheeler. The court overruled Cody's objection to that testimony because the statements alleged that Cody was putting the child at risk of serious physical injury if he were operating a four-wheeler while under the influence. Jennifer further testified that she had had to pull her son off the four-wheeler on a previous occasion when Cody was drunk. Thus, this was not the first instance when something like this had happened.

Cody called Michael Sean Richard, a neighbor, as a witness. Richard was at the parties' property talking with Cody on Easter Sunday. He was there when Jennifer pulled up with her son and was there when they left. Richard did not observe Cody slurring, drunk, or under the influence. However, Richard testified that he had seen Cody take "maybe one or two shots of whiskey" before Jennifer got there. On cross-examination, however, Richard testified that he was not within earshot the whole time that Cody and Jennifer were having a discussion. He does not know whether or not Cody and Jennifer were discussing the child's getting on the four-wheeler or not.

The court then asked Richard a few questions. He arrived there about 5:20 and left about 7:00 p.m. During that time frame, he saw Cody drink one to two shots of whiskey. Richard testified that he has been around Cody when he has been intoxicated. Richard had just started coming around again maybe two or three months ago. A few years ago, Cody was intoxicated a lot -- essentially on a daily basis. Over the past few months, Richard had been around Cody roughly five or six times; Easter Sunday was the only day on which he saw Cody take a shot -- actually two shots on this occasion.

Next, Cody called his brother-in-law, Seth Jones, to testify. Jones is married to Cody's sister. Cody went to Jones's house later that night. Jones was watching television and was falling asleep. Cody asked to use the phone and made

a call on speaker. Jones heard Cody say that he wanted his kids back home in 30 minutes or that she (Jennifer) would regret it. He also heard Cody say, "f**k you all and f**k your whole family." Jones could not hear what Jennifer said.

Cody also called Rachel Pickering, an investigator for the Cabinet for Health and Family Services, as a witness.

Cody himself did not testify.

On May 9, 2022, the court entered a Form AOC 275.3 Domestic Violence Order against Cody effective until May 9, 2023, having found "that it was established by a preponderance of the evidence that an act(s) . . . of domestic violence and abuse . . . has occurred and may again occur[.]" The trial court restrained Cody from any contact or communication with Jennifer and the children except for supervised visitation as well as from going within 500 feet of their current residence and schools; it also awarded Jennifer temporary custody.

On May 18, 2022, Cody filed a motion to vacate and alternatively to alter or amend the DVO. On June 15, 2022, the circuit court entered a highly detailed 16-page order denying the motion to vacate the DVO.

Cody then filed this appeal.

"KRS[2] 403.715(1) mandates that the domestic violence statutes be interpreted to '[a]llow victims to obtain effective, short-term protection against

---

[2] Kentucky Revised Statutes.

further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible[.]'" *Boone v. Boone*, 501 S.W.3d 434, 440 (Ky. App. 2016). KRS 403.720(2)(a)[3] defines "Domestic violence and abuse" as "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]"

A court may issue a DVO following an evidentiary hearing if it "finds by a preponderance of the evidence that domestic violence and abuse has [*sic*] occurred and may again occur . . . ." KRS 403.740(1). The preponderance of the evidence standard is met when sufficient evidence establishes that the alleged victim was "more likely than not to have been a victim of domestic violence." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (internal quotation marks and citation omitted). "The predictive nature of the standard requires the family court to consider the totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015).

"[T]he family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented." *Williford v. Williford*, 583

---

[3] Formerly numbered KRS 403.720(1).

S.W.3d 424, 429 (Ky. App. 2019).  When we review a DVO, "the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion."  *Gomez*, 254 S.W.3d at 842. Findings are not clearly erroneous if supported by substantial evidence.  *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

Cody's first argument is that the evidence was insufficient for a finding of domestic violence and abuse as defined in KRS 403.720.  He contends that infliction of fear of alleged domestic violence and abuse was not imminent; that the finding that domestic violence and abuse "may again occur" was clearly erroneous; and that he did not commit an act of domestic violence and abuse.

Cody re-argues his case before us.  In its order denying Cody's motion to vacate the DVO, the trial court made extensive and thorough findings specifically addressing Cody's arguments regarding the sufficiency and relevancy of the evidence as follows:

> 20. . . .  The Court finds [Jennifer's] testimony credible. [Cody] ordered [Jennifer] to leave the marital residence. [Jennifer] complied.  The Court concludes she did so out of fear and for the protection of her children.  Later, [Jennifer] heard [Cody] via telephone, demand the return of the children within 30 minutes or "I will f*** you up, f*** your dad up, and f*** up your whole world."  The Court is of the opinion that when someone says he will "f*** you up" it is reasonable to conclude the proponent of that statement means to do harm to the recipient of the statement. . . .  When a proponent of a statement says he will "f*** up your whole world," it is reasonable to

conclude the proponent means to do the recipient such severe harm of a such a nature that the recipient's very existence will be changed forever. This Court deems this to be an ***infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members***.

21. . . . The Court finds the 30 minute demand by [Cody] to return the children or [Cody] "**will f\*\*\* you up**" makes the threat imminent. The Court finds a 30-minute time period, in rural Graves County, to be an imminent threat. It is a threat which is pending. It is time sensitive. . . . The Court further finds the phrase "**and f\*\*\* your whole world up**" is a threat to harm [Jennifer] in such a manner as to be a complete end to her world. . . . In short, the Court finds the words used by [Cody], as testified to by [Jennifer], to be threatening words . . . of such an outrageous nature that a reasonable person would conclude that they were in fact threats of domestic violence. All of these threats by [Cody] were impending and were, therefore, imminent. Further, [Cody], by his own witness stated "you will regret this." The Court believes this could be interpreted as another threat.

The statutory hearing standard requiring that acts of domestic violence "have occurred" can be satisfied by threats of infliction of fear. It does not require actual physical injury because of the definition of "domestic violence" as set forth in KRS 403.720(1)[4]. . . . The fear exhibited by [Jennifer] was evident in her testimony -- she left after being ordered to do so and she became extremely afraid after the threatening phone call from [Cody]. After reviewing the video of the hearing, the Court is even more convinced an act of domestic violence occurred . . . .

22. The Court notes [that Cody] argues there is no history of domestic violence presented at the hearing and

---

[4] Now numbered KRS 403.720(2)(a).

therefore there cannot be a finding that any domestic violence acts may occur in the future. If this were the case, then domestic violence victims would have to be assaulted at least twice before they could seek a protective order. The Court is of the opinion that this is not the intent of the legislature, and this is simply not the law. A person may seek a domestic violence order on the first act of domestic violence being perpetrated upon them . . . . The Court further finds, based upon [Cody's] severe alcohol issues, that an act of domestic violence may occur again. The Court notes [Jennifer] testified she had to remove the child from the four-wheeler on a prior occasion when [Cody] was drunk. The Court notes [Cody's] own witness testified that [Cody] was intoxicated almost daily a few years ago. The Court finds by a preponderance of the evidence that an act of domestic violence may occur in the future and [Jennifer] is entitled to a Domestic Protective Order. The Court notes there was no evidenced [*sic*] offered by [Cody] that he no longer has an alcohol problem.

. . . .

24. [Cody] next argues irrelevant evidence of [his] prior alcohol use while attempting to operate an ATV was admitted. The Court finds the admission of the limited testimony was relevant as it relates to the likelihood that domestic violence may occur in the future. Further, if it was in error, then it was harmless error as there was testimony by [Cody's] witness that [Cody] was intoxicated almost daily during the time he was close to [Cody] a few years ago.

(Emphases original.)

As was its prerogative, the circuit court found that Jennifer was a credible witness and that her testimony provided a substantial evidentiary foundation to support the trial court's findings that an act of domestic violence and

-10-

abuse had occurred and might again occur. Consequently, the trial court's findings are not clearly erroneous. We find no abuse of discretion.

Next, Cody argues that the circuit court erred by permitting the introduction of irrelevant evidence regarding his drinking. Cody contends that even if the evidence were arguably relevant, any probative value was substantially outweighed by its prejudicial nature. "Rulings upon admissibility of evidence are within the discretion of the trial judge; such rulings should not be reversed on appeal in the absence of a clear abuse of discretion." *Simpson v. Commonwealth*, 889 S.W.2d 781, 783 (Ky. 1994).

We wholly agree with the circuit court's detailed analysis of this issue as set forth above. Allowing Jennifer's limited testimony on the issue was not an abuse of discretion. We have found no error in the court's sound reasoning and meticulous findings.

Accordingly, we affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Chris Hendricks                         Jeffery P. Alford
Murray, Kentucky                        Paducah, Kentucky

Jessica F. Flinn
Murray, Kentucky