RENDERED: DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0569-ME

ALYSSA MCDONALD                                                          APPELLANT

v.                     APPEAL FROM HOPKINS FAMILY COURT
                       HONORABLE SUSAN W. MCCLURE, JUDGE
                       ACTION NO. 23-D-00031-001

TIMOTHY MCGUIRE                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

KAREM, JUDGE: Alyssa McDonald ("Alyssa") appeals from the entry of a

domestic violence order ("DVO") against her by the Hopkins Family Court. She

argues that there was insufficient evidence to support the family court's finding

that domestic violence had occurred in her relationship with Timothy McGuire

("Tim") and might occur again. Upon careful review, we affirm.

# BACKGROUND

Tim and Alyssa were never married; they have one child in common, who was born in 2021. Tim filed a petition seeking a DVO against Alyssa on February 28, 2023. A hearing on the petition was held on April 10, 2023, at which Tim, Alyssa, and Tim's wife, Celia McGuire, testified. At that time, Alyssa was residing in Indiana with the child, of whom she has sole custody, and Tim was residing in Madisonville, Kentucky.

The following evidence was elicited at the hearing: Tim is employed in active military service and works at Fort Campbell. Alyssa and Tim began dating in the fall of 2020. Tim described it as an "on again, off again" relationship. In the spring of 2021, Tim learned that Alyssa was pregnant. He informed Alyssa via text message that he did not want to continue their relationship and was planning to reconnect with his then ex-wife, Celia, but that he "would still father her child."

Alyssa reacted by breaking into Tim's house one morning in May 2021. Tim testified that he was at home with Celia and their two youngest children when Alyssa kicked in the front door, breaking the glass, and entered the home without permission. Celia testified that she immediately took the children to an upstairs bedroom and that they were frightened and traumatized by the event. Tim testified that Alyssa began to "push and entice a fight." Tim did not call the police

following this incident. When the family court observed that the incident had occurred almost two years before and asked Tim why he had not filed a petition for a protective order at that time, he replied that he "attempted a form of grace, thinking that she would stop." As an additional reason for not calling the police, Tim and Celia cited the fact that Alyssa was six months pregnant at the time of the incident.

The family court told Tim that this episode in 2021 was too distant in time to provide the sole basis for the entry of a DVO and repeatedly asked him if he had evidence of more recent events which rose to the level of creating a threat of imminent harm.

Tim thereafter testified that Alyssa was using the court system to harass him; had improperly contacted his Army superiors to complain that he was not paying child support or providing insurance for their child; hired a private investigator to follow him; sent anonymous text messages with pornographic videos; and attempted to contact him even though there was a court order in place specifying that their only contact should be via Our Family Wizard ("OFW"), an app used for co-parenting.

Before moving to Indiana, Alyssa resided in Montgomery County, Tennessee, where a custody and child support case relating to her child with Tim was ongoing. Alyssa also initiated a domestic violence action against Tim in

Tennessee which was dismissed for lack of jurisdiction after she relocated to Indiana. She thereafter sought an emergency protective order against Tim in Indiana, a matter which was still pending at the time of the DVO hearing. Tim testified that he filed the petition for the DVO after receiving notice of her filing for the emergency order in Indiana. He testified that there was a court order in place in the Tennessee case involving their child which specified that all contact was to be made only through OFW. Nonetheless, Alyssa repeatedly attempted to contact him and Celia. Both he and Celia testified that they received numerous text messages from Alyssa which were often lewd and contained pornographic videos, but they both admitted they had no proof she had sent them as they came from anonymous phone numbers. They also received a large amount of mail from Alyssa which they discarded. Tim testified that he had no relationship with their child because of Alyssa's behavior.

Tim testified that Alyssa bypassed their ongoing family court case and contacted his military superiors or "chain of command" at work to complain that he was not paying child support and had not enrolled their child in health insurance in a timely manner. Tim testified that he did pay child support through automatic deductions which were sometimes delayed, a matter over which he had no control. He testified that he was ultimately cleared by the Army of any wrongdoing, but the

effect of the investigation was devastating on his career, and he was planning to retire.

Tim also testified that Alyssa had hired a private investigator to monitor him and Celia. He claimed this was evidenced by a sworn statement Alyssa had attached to her petition for an emergency protective order in Montgomery County. When the family court asked Tim if Alyssa's hiring someone to keep track of him and his whereabouts and contacting his work and family rose to the level of a threat causing him imminent harm, he replied "Yes."

Alyssa explained that she did not remember breaking the glass in the door of Tim's house in 2021. She explained that she thought he was separated from his wife and that she and Tim were getting together. She testified that she had severe PTSD following the death of her husband, a member of the Special Forces who was killed in action in 2014.

She also admitted that she contacted Tim's superiors at work in an effort to "speed things up" in the family court case. She also admitted hiring the private investigator but explained that he was not to follow Tim but to investigate anonymous text messages she was receiving. She denied sending any anonymous text messages to Tim.

Alyssa's demeanor at the hearing was initially distraught. The family court thereafter had to repeatedly instruct her to answer counsel's questions directly.

The family court made the following oral findings following the hearing:

> Ordinarily speaking, the court would find that the actions that occurred back in 2021 – if that had been the only thing that had occurred in this case, the court would find that that was too remote in time. However, it appears that, and the court finds, that [Alyssa] has continued to initiate action, contact, communication, harassment toward [Tim] for no legitimate purpose since that day, and given the fact that it's continuing to go on and on and on without stopping, and given the past behavior of her and given her behavior here today, the court finds that that equates to an act or threat of domestic violence so it could occur again if there's an order not entered.

The family court made the following written findings to support its entry of a DVO:

> The Petitioner and his spouse testified that the Respondent broke through the front door of their home in March 2021 and began a disturbance and an altercation which the Petitioner felt was threatening in nature; the Respondent testified that she does not remember and agreed that she has periods of "blacking out" and being unable to remember events. Since that event, the Respondent has engaged in a course of conduct that has seriously alarmed the Petitioner and has served no legitimate purpose; she has continued to engage in similar conduct and has escalated the conduct despite a court order restricting contact to OFW. That course of conduct includes, *inter alia*, contacting his commanding

-6-

officer for frivolous reasons, filing harassing legal actions, repeatedly contacting others to locate the Petitioner, and hiring a private investigator to monitor the Petitioner and his family. The Court finds that, given the totality of the circumstances, the facts as presented, the Respondent's situation, and the parties' history, that an act or threat of domestic violence has occurred and additionally, that the Respondent's actions would appear threatening to a reasonable person and would cause a reasonable person (including the Petitioner) to be fearful of imminent harm. The Court further finds that, given these circumstances and the parties' history, that an act or threat of DV may occur again.

This appeal by Alyssa followed.

## STANDARD OF REVIEW

Kentucky Revised Statutes ("KRS") 403.740(1) permits a court to issue a DVO if, following an evidentiary hearing, the court "finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" KRS 403.720(2) defines "[d]omestic violence and abuse" as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" "Imminent" is defined as "impending danger, and, in the context of domestic violence and abuse as defined by KRS 403.720, belief that danger is imminent can be inferred from a past pattern of repeated serious abuse." KRS 503.010(3). "The preponderance of the evidence standard is met when

sufficient evidence establishes that the alleged victim 'was more likely than not to have been a victim of domestic violence.'" *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007) (citation omitted). "The predictive nature of the standard requires the family court to consider the totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015).

When a trial court is the factfinder, "[f]indings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Kentucky Rules of Civil Procedure ("CR") 52.01. Findings are not clearly erroneous if they are "supported by substantial evidence or, in other words, evidence that when taken alone or in light of all the evidence has sufficient probative value to support the trial court's conclusion." *Rupp v. Rupp*, 357 S.W.3d 207, 208 (Ky. App. 2011) (citation omitted). "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citation omitted).

## ANALYSIS

Alyssa argues that Tim was unable to identify any incident occurring in the two years preceding the filing of his petition in which Alyssa caused him physical injury, assaulted him, or caused him fear of imminent physical injury. She contends that the allegation she broke into his home in May 2021 was not supported by photographic evidence or a police report. She argues that the only other evidence he was able to muster – that she sent him mail which he did not open and that he received lewd text messages from an unknown number – was insufficient to support entry of the DVO. She claims that he was just upset that Alyssa had attempted to get a protective order against him first and his quest for a DVO was simply retaliatory.

As support for her contention that the evidence was insufficient to support a finding of imminent harm, Alyssa relies on *Hall v. Smith*, 599 S.W.3d 451 (Ky. App. 2020). Hall sought a DVO against Smith, from whom she had been divorced for twelve years. The couple had two teenage children and were still engaged in custody disputes. Hall alleged that Smith stalked her, was deceptive, was demeaning and abusive to the children, and drove down her street repeatedly. She claimed that there was physical and mental abuse during the marriage and that he had been charged with aggravated assault for pulling a gun on his ex-girlfriend and her boyfriend. Hall alleged that one of the children saw a big gun on Smith's

countertop. The Court of Appeals affirmed the trial court's denial of a DVO, agreeing that there was insufficient evidence of an imminent danger of domestic violence.

*Hall* is distinguishable from the facts before us because there was no evidence in that case that an act of domestic violence had occurred. By contrast, Alyssa's action in kicking in the door of Tim's home, entering without permission, and threatening a fight would on its own have been grounds for the entry of a DVO, had Tim sought one at the time the incident occurred. In the following two years, Alyssa displayed a pattern of harassment directed at Tim's employment, made repeated efforts to bypass the court system and disobey court orders, contacted Tim as well as members of his family, and hired a private investigator to keep track of Tim. This ongoing pattern, coupled with the earlier incident, supported the family court's conclusion that there was a legitimate imminent threat of domestic violence.

Alyssa claims her conduct was understandable because Tim had challenged their child's paternity, failed to timely put their child on his insurance, and paid child support sporadically. She alleges he rebuffed her many attempts to coparent with her and claims he is okay with fathering children but not actually being a parent to them. Many of these allegations are not supported by evidence in the record.

Alyssa also argues that the family court's findings of fact do not conform to the testimony presented and constitute an abuse of discretion. She focuses particularly on the family court's finding that she had engaged in a course of conduct that seriously alarmed Tim. Although Tim never used the words alarmed or fearful, he emphatically responded in the affirmative when the family court asked him if Alyssa's hiring of a private investigator to keep track of him and contacting his work and family rose to the level of a threat causing him imminent harm.

She further argues that the evidence showed a de-escalation in her behavior over time. She points to testimony that neither Tim nor his wife has seen her since 2021 nor received mail from her since 2022, and that she has not contacted his commanding officer again. But the evidence also shows that upon moving to Indiana, she immediately filed a petition for an emergency protective order against Tim. The family court also cited Alyssa's erratic behavior at the DVO hearing, at which she appeared to break down, and then refused to answer counsel's questions directly, instead giving lengthy self-justifying testimony.

Alyssa challenges the family court's finding that her contacting Tim's commanding officer was concerning behavior with no legitimate purpose. She admits that contacting someone's superior in the civilian world is a significant overstep and may constitute harassing behavior but claims the same is not true for

the military. She claims that commanding officers are often intimately involved in the private lives of their soldiers due to the strict moral code to which members of the military are expected to adhere. There is absolutely no evidence in the record to support any of these claims and they will not be addressed here.

Finally, in her reply brief, Alyssa raises the argument that the family court misapplied the statutory definition of stalking to Alyssa's course of conduct. The family court never stated that Alyssa was stalking Tim and therefore this argument is not well-founded. In any event, this argument will not be addressed here because "[t]he reply brief is not a device for raising new issues which are essential to the success of the appeal." *Catron v. Citizens Union Bank*, 229 S.W.3d 54, 59 (Ky. App. 2006) (quoting *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky. App. 1979)).

## <u>CONCLUSION</u>

For the foregoing reasons, the Hopkins Family Court's entry of the DVO is affirmed.

ALL CONCUR.

-12-

BRIEFS FOR APPELLANT:

Allison Spencer Russell
Shanna R. Ballinger
Louisville, Kentucky

BRIEF FOR APPELLEE:

James "Chip" Adams II
Madisonville, Kentucky